# DOSAR NR. 1714/2/2024 (846/2024)

*Criminal Sentence of 12.03.2024 – English translation*

*English text of this document, extracted from its Romanian–English parallel translation. Unofficial, for information only; not a certified or sworn translation.*

| **ENGLISH TRANSLATION** |
| :---: |
| **ROMANIA** |
| **BUCHAREST COURT OF APPEAL – FIRST CRIMINAL DIVISION** |
| Case no. 1714/2/2024 (846/2024) |
| **JUDGMENT NO. 38/F** |
| Public hearing of 12.03.2024 |
| The Court composed of: |
| **PRESIDING JUDGE – CORINA CIOBANU** |
| **COURT CLERK – MARIANA ROB** |

The Public Ministry – the Prosecutor's Office attached to the Bucharest Court of Appeal – was represented by prosecutor Sabău Amaryl.

On the docket is the settlement of the criminal case concerning the execution of the European Arrest Warrant issued on 19.01.2024 by a Senior District Judge (Chief Magistrate) of the Westminster Magistrates' Court (United Kingdom of Great Britain and Northern Ireland), based on the arrest warrant dated 19 January 2023, issued by the Westminster Magistrates' Court, in the name of the requested person *Tate Emory Andrew.*

At the roll call made in the public hearing, the requested person Tate Emory Andrew appeared, being in custody, assisted by chosen counsel attorney Vidineac Eugen and chosen counsel attorney Gliga Ioan Constantin, according to the power of attorney series BV no. 220568/2022.

The English language interpreter, Ms. Slăvuică Elena, is present.

The summoning procedure was legally fulfilled.

The case was presented by the court clerk, after which,

The Court, in accordance with art. 104 of Law no. 302/2004, verifies the identity of the requested person Tate Emory Andrew and informs him of the reason for his appearance before the court at this hearing, namely the content of the European Arrest Warrant issued by the British judicial authorities, based on a national arrest warrant issued on 19.01.2023, requesting his surrender for the purpose of conducting investigations regarding a series of offenses, he stating that he has no objections regarding his identity.

Asked, through the English language interpreter, the requested person states that he has been served with the arrest warrant in English.

The chosen counsel of the requested person, attorney Gliga Ioan, requests the submission, in copy, of the supervision program ordered in the context of the judicial control measure within the case pending before the

Bucharest Tribunal, which the requested person strictly complies with, a measure ordered in August 2023. He also requests that the Court take into consideration, in its deliberation, the documents submitted in case no. 1713/2/2024.

The representative of the Public Ministry, having the floor, states that he agrees with the admission of the requested evidence.

The Court admits the evidentiary request and notes that it is administered by submitting the documents to the case file.

The Court, through the English language interpreter, informs the requested person that he may express his consent to surrender to the British judicial authorities in order to carry out the necessary investigations regarding the offenses mentioned in the arrest warrant, in which case the consent is irrevocable, or, on the contrary, he may refuse surrender to the British authorities by invoking grounds for refusal.

The requested person, personally, through the English language interpreter, states that he does not agree to surrender to the British authorities, for which reason the Court proceeds to draw up a statement (page 10).

The Court, through the English language interpreter, informs the requested person that he has the possibility to rely on the rule of specialty, which means that, if surrender is decided, he cannot be tried or convicted for other acts than those covered by the present arrest warrant.

Being asked, the requested person personally, through the English language interpreter, states that he does not waive the rights conferred by the rule of specialty.

As there are no further requests, objections, or evidence to be administered, the Court gives the floor on the merits of the case.

The representative of the Public Ministry, having the floor, requests the admission of the referral submitted by the Prosecutor's Office attached to the Bucharest Court of Appeal, considering that no mandatory or optional ground for refusal of execution of the arrest warrant is applicable. Following the checks carried out, it appears that the acts forming the object of the arrest warrant are not subject to criminal proceedings in Romania, in the case pending before the Bucharest Tribunal, the acts retained having been committed in a different period.

He requests the execution of the arrest warrant issued in the name of the requested person Tate Emory Andrew by the British judicial authorities and the ordering of his surrender, with respect to the rule of specialty; to take note that he does not consent to surrender and to order his arrest for the purpose of surrender, such surrender to be postponed until the final settlement of the case pending before the Bucharest Tribunal. He also requests the issuance of the arrest warrant, which will be executed upon the cessation of the grounds for postponement of surrender, and finally, to order the release of the requested person until the cessation of the grounds for postponement of surrender, and to note that the requested person has been detained starting from 12.03.2024.

The chosen counsel of the requested person, attorney Gliga Ioan, requests, pursuant to the provisions of art. 102 para. 5 letter b of Law no. 302/2004, the rejection of the prosecutor's request and the immediate release of the requested person. Exceptionally, should it be deemed that for the proper conduct of the judicial proceedings it is necessary to order a preventive measure, he requests that the judicial control measure be considered.

He requests that the conclusions formulated in the previous case be taken into account, regarding the usefulness of such a judicial approach, which are equally applicable in the present case, considering that, if a preventive measure were applied, it would lead to excessive burdening of the courts, with repeated verification of the grounds, given that, in the case pending before the Bucharest Tribunal, a preventive measure has already been ordered, strictly complied with by the requested person, and which ensures the purpose of the measures regulated by criminal procedural law.

He considers that the prosecutor's request must be rejected, in relation to the circumstance that there is at least one optional ground for non-execution of the European Arrest Warrant, namely that provided by art. 99 para. 2 letter b, respectively that the acts described in points 2–6 of the European Arrest Warrant are the subject of the criminal case pending before national courts. Therefore, until the final settlement of the criminal legal conflict pending before the Romanian courts, ordering a measure against the requested person would be entirely unproductive.

Upon analyzing the European Arrest Warrant, it is observed that it will be difficult to verify compliance with the principle of specialty, as long as the acts are not presented in an explicit manner regarding identifying elements of the allegedly injured persons, the time frames in which the acts were allegedly committed, in which conditions it will be impossible to verify the seriousness with which the judicial authorities will comply with this rule.

In conclusion, he requests the rejection of the surrender request, a surrender which, at the time when the proceedings before the Romanian judicial authorities are completed, remains to be seen whether it will still be relevant, especially since this is a case which, from a temporal perspective, involves at least 3 years of trial.

The chosen counsel of the requested person, attorney Vidineac Eugen, states that he adheres to the conclusions previously expressed.

The requested person Tate Emory Andrew, in his last statement, through the English language interpreter, states that he was falsely accused years ago and did not understand how much his life would be ruined by those accusations. Over time, he understood that those hardships were given to him in order to grow, develop and evolve, especially since he knows deep in his heart that he is innocent and has strived to prove this. His brother mentioned that if he were to go to England, he would be free, because the institution of pre-trial detention does not exist there, but nevertheless, he wishes to remain in Romania, to prove that he has always told the truth and wishes for the trial in Romania to be concluded, after which he will go to England on his own to resolve his issues there as well, thus he will not flee anywhere.

The Court remains in deliberation.

### T H E   C O U R T,

Deliberating on the present referral, based on the acts and documents in the case file, finds the following:

On 12 March 2024, the referral no. 696/II-5/2024 dated 12 March 2024, submitted by the Prosecutor's Office attached to the Bucharest Court of Appeal, was registered on the docket of this court under no. 1714/2/2024, having as object the execution of the arrest warrant issued on 19.01.2024 by a Senior District Judge (Chief Magistrate) of the Westminster Magistrates' Court (United Kingdom of Great Britain and Northern Ireland), based on the arrest warrant dated 19 January 2023, issued by the Westminster Magistrates' Court, in the name of the requested person TATE EMORY ANDRE ████████████████████████████████████████████████ ████████████████████████████████████████████████, issued by the British authorities on 05.10.2022), internationally wanted for committing the offenses of human trafficking, provided by art. 2 (1) of the Modern Slavery Act 2015, rape, provided by art. 1 of the Sexual Offences Act 2003, assault occasioning actual bodily harm, provided by art. 47 of the Offences Against the Person Act 1861, and controlling prostitution for gain, provided by art. 53 (1) of the Sexual Offences Act 2003, in order to rule on the taking of the measure of arrest for the purpose of surrender of the requested person, for a period of 30 days.

By detention order no. 35/12.03.2024, the Prosecutor's Office attached to the Bucharest Court of Appeal ordered the detention of the person named TATE EMORY ANDREW, for a period of 24 hours, starting from 12.03.2024, 04:00, until 13.03.2023, 04:00.

During the trial of the case, the legal assistance of the requested person was ensured by two chosen lawyers, and the Court ensured the presence of an English language interpreter.

When questioned by the court, the requested person TATE EMORY ANDREW stated that he has no objections regarding his identity and that he does not agree to be surrendered to the British judicial authorities, in which respect the procedure continued with the hearing of the requested person, in the statement given in this context, he specifying that the reason for refusing his surrender to the British authorities consists in the fact that he does not consider himself guilty of committing the acts mentioned in the arrest warrant, as well as that in Romania he has other

ongoing judicial matters, being investigated in a case in which he wishes to clarify aspects regarding his innocence, also mentioning that he wishes to rely on the principle of specialty, in the sense that, if he is surrendered to the British judicial authorities, he should be tried only for the acts which are the subject of the present request.

Analyzing the acts and documents of the case file, the Court retains the following:

With regard to the requested person TATE EMORY ANDREW, on 19 January 2024, a Senior District Judge (Chief Magistrate) of the Westminster Magistrates' Court (United Kingdom of Great Britain and Northern Ireland) issued an arrest warrant, based on the national arrest warrant dated 19 January 2023 issued by the Westminster Magistrates' Court, by which the surrender of the requested person was requested for the purpose of conducting criminal prosecution for the offenses of human trafficking and rape, punishable under British law by life imprisonment, assault occasioning actual bodily harm, punishable under British law with a maximum sentence of 5 years imprisonment, and controlling prostitution for gain, punishable under British law with a maximum sentence of 7 years imprisonment.

In the arrest warrant, the commission of a total number of 10 offenses was retained, in the period 03.07.2014 – 01.10.2016, as follows:

Arranging or facilitating the travel of another person for the purpose of exploitation, contrary to art. 2 of the Modern Slavery Act 2015, in that: between 03.04.2016 and 30.04.2016, he arranged/organized or facilitated the travel of another person with the intention that she be exploited or knowing or having reasonable grounds to know that she would be sexually exploited by another person during or after the travel.

Arranging or facilitating the travel of another person for the purpose of exploitation, contrary to art. 2 of the Modern Slavery Act 2015, in that: between 31.08.2016 and 01.10.2016, he arranged or facilitated the travel of another person with the intention that she be exploited or knowing or having reasonable grounds to know that she would be sexually exploited by another person during or after the travel.

Rape of a female person, contrary to art. 1 of the Sexual Offences Act 2003, in that: between 01.01.2015 and 01.03.2015, he intentionally penetrated the vagina of a woman with his penis, when she did not consent and he did not reasonably believe that she consented.

Rape of a female person, contrary to art. 1 of the Sexual Offences Act 2003, in that: between 01.01.2015 and 01.03.2015, he intentionally penetrated the vagina of a woman with his penis, when she did not consent and he did not reasonably believe that she consented.

Assault occasioning actual bodily harm, contrary to art. 47 of the Offences Against the Person Act 1861, in that: between 01.01.2015 and 01.03.2015, he assaulted another person, thereby causing bodily harm.

Assault occasioning actual bodily harm, contrary to art. 47 of the Offences Against the Person Act 1861, in that: between 01.01.2015 and 01.03.2015, he assaulted another person, thereby causing bodily harm.

Assault occasioning actual bodily harm, contrary to art. 47 of the Offences Against the Person Act 1861, in that: between 03.07.2014 and 07.07.2014, he assaulted another person, thereby causing actual bodily harm.

Rape of a female person, contrary to the Sexual Offences Act 2003, in that: between 31.08.2015 and 31.12.2015, he intentionally penetrated the vagina of a woman with his penis, when she did not consent and he did not reasonably believe that she consented.

Assault occasioning actual bodily harm, contrary to art. 47 of the Offences Against the Person Act 1861, in that: between 31.08.2015 and 31.12.2015, he assaulted another person, thereby causing bodily harm.

Controlling prostitution for gain, contrary to section 53 (1) of the Sexual Offences Act 2003, in that: between 01.05.2015 and 02.09.2015, he intentionally controlled the activities of another person relating to prostitution, in expectation of gain for himself or for a third person.

In detail, the British authorities retained the following factual circumstances against the person named TATE TRISTAN:

"The offenses relate to 3 female complainants.

Offenses 1 and 2 relate to the trafficking of complainant 1 for the purpose of sexual exploitation. ANDREW TATE (AT) and his brother, TRISTAN (TT), recruited complainant 1 to work as a webcam model, providing sexual services on camera for paying clients of their business. Between 3 April 2016 and 30 April 2016, AT and TT arranged and facilitated the travel of complainant 1 from the United Kingdom to Slovakia and her stay there, for her to work as a webcam model. They arranged rental accommodation for her, deducted from her salary, which was to be a percentage of her total earnings (Offense 1). She returned to the United Kingdom after an argument with TT.

Between 31 August 2016 and 1 October 2016, AT and TT further arranged for complainant 1 to travel from the United Kingdom and stay in Romania to work there as a webcam model (Offense 2), under the same remuneration conditions as in the previous trip. On this occasion, they controlled her movements and required her to inform them of her location. Complainant 1 was not actually paid on either occasion for any of the services she performed. At the time of her recruitment, the complainant was in the United Kingdom, and Andrew Tate and his brother were outside the United Kingdom.

Offenses 3–6 relate to complainant 2, who met AT in January 2015 for a business meeting regarding webcam activity. After the meeting, AT returned to her home address in the United

Kingdom, where he strangled her by holding her in an arm hold, causing her to lose consciousness (Offense 5). He then had vaginal sexual intercourse with her without her consent (Offense 3). Later that evening, while in the bedroom, AT strangled complainant 2 again (Offense 6) and raped her vaginally a second time (Offense 4). Complainant 2 suffered injuries from strangulation. These offenses took place in the United Kingdom.

Offenses 7–10 relate to complainant 3, who was in a relationship with AT in 2014. On one occasion, in July 2014, as part of consensual vaginal intercourse, AT choked her without her consent (Offense 7). On another occasion, which took place between 31 August and 31 December 2015, during vaginal intercourse, AT choked complainant 3 (Offense 9). Although she initially consented to the sexual act, she withdrew her consent as a result of the violence. The force used by AT was such that she struggled to breathe or speak and, despite attempting to pull his hands away, he continued to penetrate her until he ejaculated (Offense 8). Complainant 3 suffered injuries caused by strangulation. These offenses took place in the United Kingdom.

AT persuaded complainant 3 to work as a webcam model, providing sexual services on camera for paying clients of his business (Offense 10). Between 1 May 2015 and 2 September 2015, he controlled the activity she carried out consisting of providing sexual services via webcam and paid for the work she performed. Subsequently, he used the services of another woman to help manage the business and complainant 3's work. This offense took place in the United Kingdom."

According to art. 85 of Law no. 302/2004, the provisions of this title (regarding the European Arrest Warrant) also apply in cases where, between Romania and the requested or requesting state, a convention is applicable containing provisions similar to Council Framework Decision 2002/584/JHA of 13 June 2002 on the European Arrest Warrant and the surrender procedures between Member States of the European Union.

Also, in the present case, the provisions of Title VII of the Trade and Cooperation Agreement concluded between the European Union and the European Atomic Energy Community, on the one hand, and the United Kingdom of Great Britain and Northern Ireland, on the other hand, are applicable.

Examining the referral submitted by the Prosecutor's Office attached to the Bucharest Court of Appeal, through the lens of the legal provisions applicable in the case, the Court finds that the arrest warrant issued by the British judicial authorities in the name of the requested person TATE EMORY ANDREW meets the formal and substantive conditions provided by art. 87 of Law no. 302/2004, republished, as well as art. 606 of the Trade and Cooperation Agreement concluded between the EU and the United Kingdom, being based on the national arrest warrant issued on 19.01.2023 by the Westminster Magistrates' Court.

The objections raised by the defense of the requested person regarding the lack of clarity in the description of the accusations are unfounded, since the criminal activities in consideration of which the British judicial authorities are requesting the surrender of the requested person TATE

EMORY ANDREW were presented in the arrest warrant in a succinct, but explicit and comprehensive manner, with a concrete indication of the circumstances of time and place in which they were committed, as well as the manner in which they were committed, sufficient information being provided for their legal classification through the prism of the criminal provisions set out in the legislation of the executing state.

The fact that the names of the victims are not indicated in the description of the acts presented in the arrest warrant on the basis of which surrender is requested does not affect the legality of the procedure, since this information is, of course, known to the British judicial authorities conducting the criminal investigation in that case (so that there is no fear whatsoever that there would be difficulties with regard to the observance and application of the rule of specialty), but for reasons related to the option of the injured parties to have their identity protected and to have their personal safety and that of their family members ensured (as results from the notification letter communicated to the requested person TATE EMORY ANDREW in June 2023 – attached in the file concerning the requested person TATE TRISTAN), the solution of anonymizing the personal data was resorted to.

Also, the Court finds that the offenses of human trafficking, rape, assault occasioning actual bodily harm, and controlling prostitution for gain, to which the arrest warrant issued by the British authorities refers, fall within the category of offenses giving rise to surrender, without verification of the condition of double criminality, as provided by art. 599 para. 5 of the Trade and Cooperation Agreement between the European Union and the United Kingdom of Great Britain and Northern Ireland, respectively by art. 107 para. 1 of Law no. 302/2004. Moreover, this condition relating to double criminality is also fully satisfied in the present case, since all the offenses described in the arrest warrant on the basis of which the surrender of the requested person is sought also have corresponding offenses in Romanian legislation, these being legally classifiable as the offenses of trafficking in persons, provided by art. 210 of the Criminal Code, rape, provided by art. 218 of the Criminal Code, bodily harm, provided by art. 194 of the Criminal Code, and pimping, provided by art. 213 of the Criminal Code.

At the same time, based on the statements in the arrest warrant, compliance with the requirement established by the provisions of art. 98 para. 1 letter b of Law no. 302/2004 may also be inferred, since, given that the offenses of human trafficking and rape are punishable under British law by life imprisonment, the legislation of the issuing state provides for the possibility of review of the sentence imposed after 20 years of the sentence have been served.

Examining the procedural position of the requested person, the Court observes that his refusal to consent to surrender is not based on the invocation of any of the mandatory grounds for refusal of execution provided by art. 99 para. 1 letters a-c of Law no. 302/2004, republished, respectively by art. 600 of the Trade and Cooperation

Agreement between the European Union and the United Kingdom of Great Britain and Northern Ireland, and as regards the optional grounds

for non-execution of the arrest warrant invoked by the defense of the requested person, the Court also finds that none of them is applicable in the present case, in view of the following aspects:

Thus, with regard to the ground for refusal of execution of the warrant, provided by art. 99 para. 2 letter b of Law no. 302/2004, republished, respectively by art. 601 para. 1 letter b of the Trade and Cooperation Agreement, relating to the situation in which the person who is the subject of the arrest warrant is subject to criminal proceedings in Romania for the same act that motivated the arrest warrant, the Court finds that this hypothesis is not found in the present case, since between the offense presented in point 2 of the arrest warrant issued by the British authorities (consisting in the trafficking of a female person through her sexual exploitation on the territory of Romania, in the period 31 August 2016 and 01 October 2016) and the act of trafficking through sexual exploitation of the injured party ███████████████, during the period between the end of 2016 and April 2018, incorporated together with three other similar material acts into the constituent content of the continued offense of trafficking in persons, provided by art. 210 para. 1 letter a of the Criminal Code, in relation to art. 182 letters a and c of the Criminal Code, with the application of art. 35 para. 1 of the Criminal Code, for which he was sent to trial by indictment no. 1305/D/P/2022 dated 15 June 2023, of the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for the Investigation of Organized Crime and Terrorism – Central Structure – Section for Combating Organized Crime, there is no identity; on the contrary, they refer to different factual situations.

Thus, in the case registered on the docket of the Bucharest Tribunal – First Criminal Division under no. 18906/3/2023, currently in the preliminary chamber procedure, it was retained against the defendant TATE EMORY ANDREW by the act of referral to the court that, during the period between the end of 2016 and July 2017, through the Facebook application, while he was in Romania, he recruited, by misleading her as to the intention of establishing a family/marriage relationship and the existence of false feelings, the injured party ███████████████, and in July 2017 transported her from the UK, London, to Romania, as well as within Bucharest Municipality and Ilfov County, housed her in a building located in ██████████████████████ street, no. 50, Ilfov County, as well as on the territory of Great Britain, in London, during the period 17.02.2018 – April 2018, together with the person named ██████████, exercising acts of physical violence and psychological coercion resulting from acts of intimidation, supervision, and control over the injured party, for the purpose of her sexual exploitation, with the help of the person named ██████████, by forcing her to engage in pornographic manifestations for the purpose of producing and disseminating pornographic materials, using for this purpose the website www.myfreecams.com, where the injured party was active using the account with the username ████████, during the period 17.02.2018 – April 2018.

It therefore follows that the act described in point 2 of the arrest warrant issued by the British authorities was committed on the territory of Romania during the period 31 August 2016 and 01 October 2016, whereas the acts of actual sexual exploitation of the injured party █████████████ for which the defendant TATE EMORZ ANDREW was sent to trial in

the case forming the object of file no. 18906/3/2023 of the Bucharest Tribunal – First Criminal Division were committed during the period 17.02.2018 – April 2018, both on the territory of Great Britain and in Romania.

At the same time, the Court finds that in the present case the optional ground for non-execution of the warrant, provided by art. 99 para. 2 letter g of Law no. 302/2004, republished, respectively by art. 601 para. 1 letter d of the Trade and Cooperation Agreement, is also not applicable, since, although indeed for the offenses of rape, assault occasioning actual bodily harm, and controlling prostitution for gain, described in points 1, respectively 3-10 of the arrest warrant, according to the legislation of the executing state (art. 154 para. 1 letter c of the Criminal Code, with reference to Constitutional Court Decisions no. 297/2018 and no. 358/2022), the general limitation period for criminal liability would have expired, nevertheless this ground for refusal of surrender is not applicable, since those acts (committed by a person holding British and American citizenship, on the territory of Great Britain,

respectively Slovakia) do not fall within the jurisdiction of the Romanian judicial authorities (according to art. 8 and art. 9 of the Criminal Code, respectively art. 41 and art. 42 of the Criminal Procedure Code).

As regards the fact that according to the document attached at page 45 of the file concerning the requested person TATE TRISTAN, the judicial authorities in the UK allegedly issued in 2017 a statement to the effect that the acts to which the arrest warrant whose execution is sought in the present case refers had initially been closed, the Court finds in that document no concrete information allowing it to establish with certainty that the respective statement concerns the very acts which motivated the issuance of the arrest warrant of 19.01.2024 and, moreover, even if such a decision had been ordered, it appears from the acts and documents of the case file that the acts in consideration of which the British authorities are currently requesting the surrender of the requested person are the subject of ongoing judicial proceedings, in which a national arrest warrant was also issued in the name of the requested person (issued on 19 January 2023 by the Westminster Magistrates' Court).

Also, the fact that in June 2023 the British authorities sent the requested person TATE EMORY ANDREW an information letter by means of which he was informed that four victims intend to commence criminal proceedings against him before the High Court of Justice of England and Wales seeking damages for intentional infliction of injury, assault, coercive and controlling behavior, with alternative dispute resolution procedures having been initiated at the pre-action stage in accordance with the protocols regulated by British legislation, has no relevance in the pending case, since it follows from the description of the acts presented in that letter that they occurred in 2013 and 2014, in factual circumstances other than those forming the subject matter of the arrest warrant whose execution is sought in the present case. In addition, even if it were a matter of identity of acts, not even the requested person claimed that the respective mediation procedure had ended in a manner intended to remove his criminal liability for those acts, such that surrender would no longer be necessary.

Consequently, pursuant to art. 109 para. 1 in relation to art. 104 para. 7 and art. 110 para. 2 first thesis of Law no. 302/2004, republished, the Court will admit the referral submitted by the Prosecutor's Office attached to the Bucharest Court of Appeal and will order the execution of the arrest warrant issued on 19 January 2024 by a Senior District Judge (Chief Magistrate) of the Westminster Magistrates' Court (United Kingdom of Great Britain and Northern Ireland), based on the arrest warrant dated 19 January 2023 issued by the Westminster Magistrates' Court, in the name of the requested person TATE EMORY ANDREW.

However, having regard to the fact that, at present, the requested person TATE EMORY ANDREW is being investigated in the case forming the object of criminal file no. 18906/3/2023 pending before the Bucharest Tribunal – First Criminal Division, the Court finds that, in the present case, the provisions of art. 114 para. 1 in relation to art. 58 para. 1 of Law no. 302/2004, republished, are applicable, according to which, in the event that a requested person is being criminally investigated by the Romanian judicial authorities, his surrender shall be postponed until the final settlement of the case, and, if he is sentenced to imprisonment to be served under a detention regime, until his release as a result of conditional release or until the sentence is fully served.

Therefore, pursuant to art. 114 para. 1 in relation to art. 58 para. 1 of Law no. 302/2004, republished, it will order the postponement of the surrender of the requested person until the final settlement of the case forming the object of criminal file no. 18906/3/2023 pending before the Bucharest Tribunal – First Criminal Division, and if, in that case, a judgment of conviction to imprisonment to be served under a detention regime is delivered against the requested person, until his release as a result of conditional release or until the sentence is fully served.

It will note that the requested person chooses to rely on the benefit of the rule of specialty provided by art. 117 of Law 302/2004, republished.

It will order the arrest of the requested person, for the purpose of surrender to the British judicial authorities, for a period of 30 days, starting from the date on which the reasons that justified the postponement of surrender cease.

It will note that the requested person was detained for a period of 24 hours, starting from 12 March 2024, 04:00, based on Detention Order no. 35 dated 12 March 2024, issued by the Prosecutor's Office attached to the Bucharest Court of Appeal.

It will order the immediate release of the requested person TATE EMORY ANDREW from under the authority of Detention Order no. 35 dated 12 March 2024, issued by the Prosecutor's Office attached to the Bucharest Court of Appeal, this enforceable disposition to be communicated to the administration of the place of detention.

Pursuant to art. 32 para. 3 letter a of Law no. 76/2023, it will request the National SIRENE Bureau to undertake the necessary steps to add a validity indicator to the SIS alert introduced by the issuing state.

Pursuant to art. 275 para. 3 of the Criminal Procedure Code, the judicial expenses shall remain borne by the state, including the fee due to the English language interpreter for 3 (three) hours of activity performed, which shall be covered from the sums advanced from the funds of the Ministry of Justice, according to art. 272 para. 1, 2, art. 273 para. 1, 4 and 5, and art. 275 para. 6 of the Criminal Procedure Code.

### *FOR THESE REASONS,*

### *IN THE NAME OF THE LAW,*

### *RULES:*

Pursuant to art. 109 para. 1 in relation to art. 104 para. 7 and art. 110 para. 2 first thesis of Law no. 302/2004, republished, it admits the referral submitted by the Prosecutor's Office attached to the Bucharest Court of Appeal.

It orders the execution of the arrest warrant issued on 19 January 2024 by a Senior District Judge (Chief Magistrate) of the Westminster Magistrates' Court (United Kingdom of Great Britain and Northern Ireland), based on the arrest warrant dated 19 January 2023 issued by the Westminster Magistrates' Court, in the name of the requested person TATE EMORY ANDREW ███████████████████████████████████████████████████████████████████████████████, issued by the British authorities on 05.10.2022).

Pursuant to art. 114 para. 1 in relation to art. 58 para. 1 of Law no. 302/2004, republished, it orders the postponement of the surrender of the requested person until the final settlement of the case forming the object of criminal file no. 18906/3/2023 pending before the Bucharest Tribunal – First Criminal Division, and if, in that case, a judgment of conviction to imprisonment to be served under a detention regime is delivered against the requested person, until his release as a result of conditional release or until the sentence is fully served.

It finds that the requested person chooses to rely on the benefit of the rule of specialty provided by art. 117 of Law 302/2004, republished.

It orders the arrest of the requested person, for the purpose of surrender to the British judicial authorities, for a period of 30 days, starting from the date on which the reasons that justified the postponement of surrender cease.

It finds that the requested person was detained for a period of 24 hours, starting from 12 March 2024, 04:00, based on Detention Order no. 35 of 12 March 2024, issued by the Prosecutor's Office attached to the Bucharest Court of Appeal.

It orders the immediate release of the requested person TATE EMORY ANDREW from under the authority of Detention Order no. 35 of 12 March 2024, issued by the Prosecutor's Office attached to the Bucharest Court of Appeal, this enforceable disposition to be communicated to the administration of the place of detention.

| |
|---|
| Pursuant to art. 32 para. 3 letter a of Law no. 76/2023, it requests the National SIRENE Bureau to undertake the necessary steps to add a validity indicator to the SIS alert introduced by the issuing state. |
| Pursuant to art. 275 para. 3 of the Criminal Procedure Code, the judicial expenses remain borne by the state. |
| Pursuant to art. 272 para. 1, 2, art. 273 para. 1, 4 and 5, and art. 275 para. 6 of the Criminal Procedure Code, the fee due to the English language interpreter for 3 (three) hours of activity performed shall be covered from the sums advanced from the funds of the Ministry of Justice and shall remain borne by the state. |
| With the right to challenge within 5 days from pronouncement. |
| Pronounced in public hearing today, 12 March 2024. |
| *PRESIDING JUDGE,* |
| Corina Ciobanu |
| *COURT CLERK,* |
| Mariana Rob |