# DOSAR NR. 2557/D/P/2023

*Ordinance of 03.07.2026 – English translation*

*English text of this document, extracted from its Romanian–English parallel translation. Unofficial, for information only; not a certified or sworn translation.*

| **ENGLISH TRANSLATION** |
|---|
| **R O M A N I A** |
| **PUBLIC MINISTRY** |
| **PROSECUTOR'S OFFICE ATTACHED TO THE HIGH COURT OF CASSATION AND JUSTICE** |
| **DIRECTORATE FOR INVESTIGATING ORGANIZED CRIME AND TERRORISM** |
| **CENTRAL STRUCTURE** |
| **SECTION FOR COMBATING ORGANIZED CRIME** |
| 33 Sfânta Vineri, District 3, Bucharest, contact@diicot.ro, operator code 16051 |
| Telephone: 021.412.31.27; Fax: 021.314.05.83 |
| **File no. 2557/D/P/2023** |
| **ORDINANCE** |
| *imposing the preventive measure of judicial control on def. Tristan TATE* |
| **03.07.2026** |
| **Cezar Profira**, chief prosecutor of service within the Directorate for Investigating Organized Crime and Terrorism – Section for Combating Organized Crime, |
| Having examined the criminal prosecution documents in the file bearing the above number, |
| **FINDS:** |
| **I. History of file 2557/D/P/2023 (commencements in rem, extensions in rem, joinders, etc.):** |
| **1. File 2557/D/P/2023:** |
| On 19.05.2023, the police officers within the Ilfov Organized Crime Combating Service took up the matter ex officio regarding the commission of the offence of **"human trafficking"**, an act provided for by art. 210 para. 1 of the Criminal Code, consisting in the fact that, *beginning with January 2020, the person named Tate Tristan – personal identification number (PIN): 7880715470021, by deceit as to the intention of establishing a relationship of love/marriage/cohabitation and the existence of genuine feelings of love, approached the person named* [redacted]*, subsequently proposing that she carry out webcam (videochat) activities within a studio which had this purpose and which was owned and managed by him.* |

| |
|---|
| In fact, in the course of January 2020, the person named [redacted] was approached on the Instagram social network and subsequently on the written messaging application "WhatsApp" by the person named Tate Tristan, a moment which coincides with the start of the relationship between the two. |
| In the context of the relationship between the two, the person named [redacted] domiciled in the municipality of Cluj, repeatedly visited the residence of the person named Tate Tristan in Voluntari, on which occasion she observed that this residence was frequented by numerous female persons about whom the person named Tristan Tate would tell her that they worked for him, at which point she learned of the webcam business of the person named Tate Tristan. |
| Subsequently, following the insistence of the person named Tristan Tate, beginning with June 2020, the person named [redacted] began to carry out webcam-specific activities under the coordination of the person named Tristan Tate, but also of his assistant, Naghel Georgiana. |
| Initially, the person named [redacted] carried out activities on the MyFreeCams platform, subsequently also on the "OnlyFans" platform, the accounts on this platform being created and managed by Naghel Georgiana. The sums of money obtained on the webcam platforms were collected by the person named Tristan Tate, who subsequently offered a small percentage of these sums also to the person named [redacted]. |
| Given that from the aspects described above there resulted data and indications concerning the commission of the offence of: **"human trafficking"**, an act provided for and punishable by **art. 210 of the Criminal Code**, the criminal investigation bodies within the BCCOB – Ilfov Organized Crime Combating Service proceeded to forward the official report of ex officio notification to DIICOT – Central Structure. |
| Having regard to these considerations, it was retained that there existed the factual elements falling within the constituent content of the offence of **"human trafficking"**, an act provided for by **art. 210 para. 1 lit. a of the Criminal Code**, consisting in the fact that: |
| *- in the period January 2020 – June 2020, the person named Tate Tristan recruited the injured person* [redacted] *by deceit, and in the period June 2020 – November 2021 he sheltered her in buildings within Ilfov County, coercing her through acts of psychological violence to perform various activities on online webcam platforms, in the sense of recording, distributing and live-streaming adult-dedicated video content, on the MyFreeCams platform, subsequently also on the "OnlyFans" platform, exploiting her for the purpose of obtaining sums of money.* |
| In this context, by Ordinance **no. 2557/D/P/2023** of **21 June 2023**, the **commencement of the criminal prosecution in rem** was ordered, in respect of the commission of the offence of **"human trafficking"**, an act provided for by **art. 210 para. 1 lit. a of the Criminal Code**. |
| **2. File 2558/D/P/2023:** |
| On 19.05.2023, the police officers within the Ilfov Organized Crime Combating Service took up the matter ex officio regarding the commission of the offence of **"human trafficking"**, an act provided for by art. 210 para. 1 of the Criminal Code, consisting in the fact that, *beginning with February 2020, the person named Tate Tristan –* [redacted]*, by deceit as to the intention of establishing a relationship of love/marriage/cohabitation and the existence of genuine feelings of love, approached the person named* [redacted] *subsequently proposing that she carry out webcam activities within a studio which had this purpose and which was owned and managed by him.* |
| In fact, in the course of February 2020, the person named [redacted] was approached on the Instagram social network and subsequently on the written messaging application "WhatsApp" by the person named Tate Tristan, a moment which coincides with the start of the relationship between the two. At that time, the person named [redacted] did not have a stable job. |

At the start of the relationship, the person named Tristan Tate did not confess to his girlfriend [redacted] that his financial income derived from managing webcam businesses.

In the context of the relationship between the two, the person named [redacted] repeatedly visited the residence of the person named Tristan Tate in Voluntari, on which occasion she observed that this residence was frequented by numerous female persons about whom the person named Tristan Tate would tell her that they worked for him, at which point she learned of the webcam business of the person named Tristan Tate.

Subsequently, after the person named Tristan Tate became aware that the person named [redacted] had in the past carried out webcam-specific activities, by exercising acts of psychological coercion and under the pretext that she could earn significant sums of money, he determined [redacted] to resume this activity, this time for his benefit.

In this respect, following the insistence of the person named Tristan Tate, beginning with June 2020, the person named [redacted] began to carry out webcam-specific activities under the coordination of the person named Tristan Tate, but also of his assistant, Naghel Georgiana.

Initially, she carried out activities on the MyFreeCams platform, the account on this platform being created and managed by Naghel Georgiana. The activities were carried out in a residence within the town of Voluntari, a residence rented for this purpose by the person named Tristan Tate; subsequently, the person named [redacted] against the background of some contradictory discussions with the person named Tristan Tate, wished to continue the activity in a residence within the municipality of Brașov, a residence likewise provided by the person named Tristan Tate. The sums of money obtained on the webcam platforms were collected by the person named Tristan Tate, who subsequently offered a small percentage of these sums also to the person named [redacted]

Given that from the aspects described above there resulted data and indications concerning the commission of the offence of **"human trafficking"**, an act provided for by **art. 210 of the Criminal Code**, the criminal investigation bodies within the BCCOB – Ilfov Organized Crime Combating Service proceeded to forward the official report of ex officio notification to DIICOT – Central Structure.

Having regard to these considerations, it was retained that there existed the factual elements falling within the constituent content of the offence of **"human trafficking"**, an act provided for by **art. 210 para. 1 lit. a of the Criminal Code**, consisting in the fact that:

*- in the period February 2020 – June 2020, the person named Tate Tristan recruited the injured person* [redacted] *by deceit, and beginning with June 2020 until November 2021 he transported and sheltered her in buildings within Ilfov County, but also Brașov County, coercing her through acts of psychological violence to perform various pornographic activities on online webcam platforms, in the sense of recording, distributing and live-streaming adult-dedicated video content, on the MyFreeCams platform, exploiting her for the purpose of obtaining sums of money.*

In this context, by Ordinance **no. 2558/D/P/2023** of **21 June 2023**, the **commencement of the criminal prosecution in rem** was ordered, in respect of the commission of the offence of **"human trafficking"**, an act provided for by **art. 210 para. 1 lit. a of the Criminal Code**.

**3. File 3053/D/P/2023:**

On 08.06.2023, the police officers within the Ilfov Organized Crime Combating Service took up the matter ex officio regarding the commission of the offence of **"human trafficking"**, an act provided for by **art. 210 para. 1 of the Criminal Code**, consisting in the fact that, *beginning with August 2019, the person named Tate Tristan, by deceit as to the intention of establishing a relationship of love/marriage/cohabitation and the existence of genuine feelings of love, approached the person named* [redacted] – [redacted],

| |
|---|
| *subsequently proposing that she carry out webcam activities within a studio which had this purpose and which was owned and managed by him.* |
| In fact, in the course of August 2019, the person named [redacted] was approached on the Facebook social network and subsequently on the written messaging application "WhatsApp" by the person named Tate Tristan, a moment which coincides with the start of the relationship between the two. |
| At the start of the relationship, the person named Tristan Tate did not confess to his girlfriend [redacted] that his financial income derived from managing webcam businesses. |
| In the continuation of the relationship, following the insistence of the person named Tristan Tate, beginning with September 2019, the person named [redacted] began to carry out webcam-specific activities under the coordination of the person named Tristan Tate, but also of his assistant, Naghel Georgiana. |
| The person named [redacted] carried out webcam-specific activities on the MyFreeCams platform, the account on this platform being created and managed by Naghel Georgiana. The activities were carried out in a residence within the town of Voluntari, a residence rented for this purpose by Tristan Tate through the person named Naghel Georgiana. |
| The sums of money obtained on the webcam platforms were collected by the person named Tristan Tate, who subsequently offered a small percentage of these sums also to the person named [redacted]. |
| Given that from the aspects described above there resulted data and indications concerning the commission of the offence of **"human trafficking"**, an act provided for by **art. 210 of the Criminal Code**, the criminal investigation bodies within the BCCOB – Ilfov Organized Crime Combating Service proceeded to forward the official report of ex officio notification to DIICOT – Central Structure. |
| Having regard to these considerations, it was retained that there existed the factual elements falling within the constituent content of the offence of **"human trafficking"**, an act provided for by **art. 210 para. 1 lit. a of the Criminal Code**, consisting in the fact that: |
| *- in the period August – September 2019, the person named Tate Tristan recruited the injured person* [redacted] *by deceit, and in the period September 2019 – December 2021 he sheltered her in buildings within Ilfov County, coercing her through acts of psychological violence to perform various activities of a pornographic nature, on online webcam platforms, in the sense of recording, distributing and live-streaming adult-dedicated video content, of a pornographic nature, exploiting her for the purpose of obtaining sums of money.* |
| In this context, by Ordinance **no. 3053/D/P/2023** of **21 June 2023**, the **commencement of the criminal prosecution in rem** was ordered, in respect of the commission of the offence of **"human trafficking"**, an act provided for by **art. 210 para. 1 lit. a of the Criminal Code**. |
| By Ordinance **no. 2557/D/P/2023** of **01 August 2023**, the **joinder** of the files bearing the numbers **no. 2557/D/P/2023, no. 2558/D/P/2023 and no. 3053/D/P/2023 was ordered, the investigations being continued under no. 2557/D/P/2023.** |
| * |
| By Ordinance **no. 2557/D/P/2023** of **10 October 2023**, the **extension of the criminal prosecution IN REM in respect of the commission of the offence of "influencing statements"** was ordered, an act provided for and punishable by **art. 272 para. 1 of the Criminal Code**, consisting in the fact that, *the persons named ANDREW and TRISTAN TATE were attempting to determine the injured persons/victims and the witnesses in the present file, by bribery or by other acts having a manifestly intimidating effect, not to give statements or to give false statements.* |

| |
|---|
| By Ordinance **no. 2557/D/P/2023** of **31 October 2023**, the **extension of the criminal prosecution IN REM in respect of the commission of the offence of "human trafficking"** was ordered, an act provided for and punishable by **art. 210 para. 1 lit. a and b in conjunction with art. 182 lit. c of the Criminal Code**, consisting in the fact that, *beginning with the year 2017 – present, the persons named ANDREW and TRISTAN TATE, taking advantage both of the state of manifest vulnerability of the victims and by deceit as to the intention of establishing a relationship of love/marriage/cohabitation and the existence of genuine feelings of love, recruited the persons named* [redacted], *as well as other female persons whom, after gaining their trust, they determined to carry out webcam activities on several specialized platforms for their material benefit.* |
| By Ordinance **no. 2557/D/P/2023** of **26 January 2024**, the **extension of the criminal prosecution IN REM in respect of the commission of the offence of "continued sexual act with a minor"** was ordered, an act provided for and punishable by **art. 220 para. 1 and 4 lit. e of the Criminal Code in conjunction with art. 5 of the Criminal Code and art. 35 of the Criminal Code**, consisting in the fact that, *the person named ANDREW TATE, beginning with 04.12.2020, repeatedly had sexual intercourse and anal and oral sexual acts with the person named* [redacted] *knowing that she was 15 years old.* |
| By Ordinance **no. 2557/D/P/2023** of **29 January 2024**, the **extension of the criminal prosecution IN REM in respect of the commission of the offence of "human trafficking"** was ordered, an act provided for and punishable by **art. 210 para. 1 lit. a and b in conjunction with art. 182 lit. c of the Criminal Code**, consisting in the fact that, *beginning with the year 2017 – present, the persons named ANDREW and TRISTAN TATE, taking advantage both of the state of manifest vulnerability of the victims and by deceit as to the intention of establishing a relationship of love/marriage/cohabitation and the existence of genuine feelings of love, recruited the persons named* [redacted], *as well as other female persons whom, after gaining their trust, they determined to carry out webcam activities on several specialized platforms for their material benefit or to create content on the TikTok platform.* |
| By Ordinance **no. 2557/D/P/2023** of **17 April 2024**, the **extension of the criminal prosecution IN REM in respect of the commission of the offence of:** |
| **- "continued money laundering" – in the concealment modality**, an act provided for and punishable by **art. 49 para. (1) lit. "b" of Law 129/2019 in conjunction with art. 35 para. (1) of the Criminal Code**, consisting in the fact that, *in the period December 2023 – February 2024, the persons named Andrew TATE and Tristan TATE,* **for the purpose of concealing or disguising the illicit origin of the money obtained from the commission of the offence of human trafficking,** *purchased several luxury cars which they registered and recorded with the tax authorities in the name of other persons;* |
| **- "complicity in money laundering" – in the concealment modality**, an act provided for and punishable by **art. 48 of the Criminal Code in conjunction with art. 49 para. (1) lit. "b" of Law 129/2019**, consisting in the fact that, *in the period December 2023 – February 2024,* **for the purpose of concealing or disguising the illicit origin of the money obtained from the commission of the offence of human trafficking** *by the persons named Andrew and Tristan TATE, the persons named* [redacted] **being aware of the origin of the money with which the cars** *of the make* **LAMBORGHINI HURACAN 724 F1, FERRARI 488 SPIDER F142 BD and AUDI RS7 had been purchased, accepted the registration and recording with the tax authorities of these cars in their name.** |
| By Ordinance **no. 2557/D/P/2023** of **15 July 2024**, the **joinder** of the files bearing the numbers **no. 3062/D/P/2023 and no. 2557/D/P/2023 was ordered, the investigations being continued under no. 2557/D/P/2023.** |
| * |

| |
|---|
| By Ordinance **no. 2557/D/P/2023** of **12 August 2024**, the **extension of the criminal prosecution IN REM in respect of the commission of the offences of:** |
| - **"human trafficking"**, an act provided for and punishable by **art. 210 para. 1 lit. a and b in conjunction with art. 182 lit. c of the Criminal Code in conjunction with art. 5 of the Criminal Code** *(prior to the amendment made by Law 202/2024 of 01.07.2024)*, consisting in the fact that, beginning with the year 2014 – present, the persons named ANDREW and TRISTAN TATE, taking advantage both of the state of manifest vulnerability of the victims and by deceit as to the intention of establishing a relationship of love/marriage/cohabitation and the existence of genuine feelings of love, or by the promise of earning significant sums of money from webcam activities, recruited the persons named [redacted]), as well as other female persons whom, after gaining their trust, by coercion (emotional blackmail or acts of physical violence), they determined to carry out webcam activities on the specialized platforms MyFreeCams and OnlyFans for their material benefit. |
| - **"false testimony"**, an act provided for and punishable by **art. 273 para. 1 of the Criminal Code**, consisting in the fact that, *in the period 2023 – 2024, being influenced by the persons named ANDREW and TRISTAN TATE, some of the witnesses heard in the present case (*[redacted]*) gave false statements or did not say all that they knew in connection with the facts or essential circumstances about which they were questioned in the present case.* |
| - **"incitement to hatred or discrimination"**, an act provided for by **art. 369 of the Criminal Code**, consisting in the fact that, *through the discourses promoted on social media (YouTube, the X platform, TikTok, Telegram, etc.) the persons named ANDREW and TRISTAN TATE incited the public to hatred and discrimination against women.* |
| - **"establishing an organized criminal group"**, an act provided for by **art. 367 para. 1 of the Criminal Code**, consisting in the fact that, *in the course of the year 2015, on the territory of Romania, the persons named TATE Andrew, TATE Tristan and NAGHEL Georgiana-Manuela* **established an organized criminal group**, *a group which the persons named* [redacted] *later joined and supported, with a view to committing, on the territory of Romania and on the territory of other states such as the U.K., mainly the offences of human trafficking, through actions of recruiting the victims, carried out by the defendants TATE III Emory Andrew and TATE Tristan, and subsequently, under their coordination, through actions of sheltering, transporting, monitoring and coordinating the victims, carried out through the involvement in the criminal activity of the persons named NAGHEL Georgiana-*[redacted]*, all for the purpose of obtaining significant sums of money by* **compelling the victims to engage in pornographic displays** *with a view to producing and distributing pornographic materials, using for this purpose the MeFreeCams and OnlyFans platforms.* |
| *** |
| By Ordinance **no. 2557/D/P/2023** of **19 August 2024**, the **continuation of the criminal prosecution was ordered against the person named:** |
| **1. TATE Tristan,** [redacted]**, for the commission of the offences of:** |

**1.1. "establishing an organized criminal group" – in the establishment modality**, an act provided for by **art. 367 para. 1, 3 and 6 of the Criminal Code**,

**1.2. "continued human trafficking" – 28 material acts** by reference to the number of victims, an act provided for by **art. 210 para. 1 lit. a and b of the Criminal Code in conjunction with art. 182 lit. c of the Criminal Code in conjunction with art. 35 para. 1 of the Criminal Code and art. 5 of the Criminal Code** *(the form prior to the amendments made by Law 202/2024 of 01.07.2024)*,

**1.3. "influencing statements"** – *by reference to the person named* [redacted] an act provided for and punishable by **art. 272 para. 1 of the Criminal Code**,

**1.4. "continued money laundering" – in the concealment modality – 4 material acts**, an act provided for and punishable by **art. 49 para. (1) lit. "b" of Law 129/2019 in conjunction with art. 35 para. (1) of the Criminal Code**, *all in conjunction with art. 38 para. 1 of the Criminal Code.*

By the ordinance of the prosecutor within the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for Investigating Organized Crime and Terrorism of 21.08.2024, the **setting in motion of the criminal action** was ordered against the defendant **TATE Tristan,** for the offences in respect of which the continuation of the criminal prosecution had previously been ordered.

* * *

**Measures ordered by the judge of rights and liberties within the Bucharest Tribunal in the course of the criminal prosecution:**

*By Interlocutory Judgment no. 28369/3/2024 issued on 22.08.2024, the Bucharest Tribunal* **rejected as ill-founded the proposal for pre-trial detention**, *made by the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for Investigating Organized Crime and Terrorism – Central Structure, made in criminal prosecution file no. 2557/D/P/2023.*

*At the same time,* **the imposition of the preventive measure of house arrest on the defendant TATE III Emory Andrew** *was ordered for a duration of 30 days, from 22.08.2024 to 20.09.2024 inclusive. Likewise, the imposition of the measure of judicial control was ordered on the defendants:* **TATE Tristan and Naghel Georgiana-Manuela.**

*By Interlocutory Judgment no. 370/DL issued on 05.10.2024, the Bucharest Court of Appeal* **rejected as unfounded the DIICOT appeal** *and maintained the preventive measures ordered by the Bucharest Tribunal.*

With respect to **the defendant Tristan Tate**, the preventive measure of judicial control was successively extended by the prosecutor's ordinances of **17.10.2024, 17.12.2024 and 10.02.2025.**

By Interlocutory Judgment **no. 4527/3/2025 of 12.02.2025**, the Bucharest Tribunal admitted the complaint of the defendant Tristan Tate against the DIICOT ordinance of 10.02.2025 whereby the extension of the preventive measure of control had been ordered, ordering **the revocation of the preventive measure of judicial control imposed by the Interlocutory Judgment of 22.08.2024 delivered by the Bucharest Tribunal – Criminal Section 1 in file 28369/3/2024.**

* * *

**Data concerning the extensions of the criminal prosecution IN REM and IN PERSONAM against the defendant TATE Tristan after the revocation of the preventive measure of judicial control:**

| |
|---|
| By the ordinance of the prosecutor within the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for Investigating Organized Crime and Terrorism of **15.01.2026**, the **joinder** of the files bearing the numbers **no. 5765/D/P/2023 and no. 2557/D/P/2023** was **ordered**, the investigations being continued under **no. 2557/D/P/2023.** |
| **By** the prosecutor's ordinance no. **2557/D/P/2023** of **15.06.2026**, the **following** were ordered: |
| **a. The extension of the criminal prosecution IN REM** in respect of the commission of the offence of **"complicity in trafficking in minors"**, an act provided for by **art. 48 para. 1 of the Criminal Code in conjunction with art. 211 para. 1 and 2 lit. a in conjunction with art. 210 para. 1 lit. a and b of the Criminal Code in conjunction with art. 182 lit. c of the Criminal Code**, |
| **b. The extension of the criminal prosecution IN PERSONAM** against the defendant **TATE Tristan**, in respect of the commission of the offence of **"complicity in trafficking in minors"**, an act provided for by **art. 48 para. 1 of the Criminal Code in conjunction with art. 211 para. 1 and 2 lit. a in conjunction with art. 210 para. 1 lit. a and b of the Criminal Code in conjunction with art. 182 lit. c of the Criminal Code in conjunction with art. 5 of the Criminal Code** *(prior to the amendments made by Law 202/2024 of 01.07.2024)* – **by reference to the victim** [redacted] consisting in the fact that: |
| *- being aware of the age of the victim* [redacted] **(17 years old)** *and of the fact that* **she had been recruited** *by his brother – the defendant TATE III Emory Andrew,* **taking advantage of her state of manifest vulnerability and by deceit, for the purpose of exploitation by compelling her to create and distribute pornographic materials on webcam platforms with a view to obtaining material benefits**, *in the period November 2014 – December 2021,* **he supported him in the criminal activity of sexual exploitation of the victim, both on the territory of Great Britain and on the territory of Romania, by: keeping the victim in a state of deceit as to the feelings and intentions of the defendant TATE III Emory Andrew, managing the victim's webcam accounts on the MyFreeCams, AdultWork and OnlyFans platforms, monitoring the victim's activity, maintaining the correspondence and interaction with the members of the webcam platforms in the victim's place, providing guidance to the victim for increasing the revenues, collecting and managing the sums deriving from the webcam activity, as well as by verifying compliance with the work schedule and the financial objectives imposed on the victim by the defendant TATE III Emory Andrew, obtaining, together with his brother, patrimonial benefits in the total amount of 1,529,305.12 US dollars** *from the exploitation of the victim.* |
| By the prosecutor's ordinance no. **2557/D/P/2023** of **16.06.2026**, the **extension of the criminal prosecution IN PERSONAM** was ordered against the person named: |
| **TATE Tristan,** [redacted], in respect of the commission of the offence of **"continued money laundering" – in the concealment modality, an act provided for and punishable by art. 49 para. (1) lit. "b" of Law 129/2019 in conjunction with art. 35 para. (1) of the Criminal Code**, consisting in the fact that: |
| *- in the period 07.05.2018 – 06.10.2022, the defendants TATE Tristan and TATE III Emory Andrew, for the purpose of concealing and disguising the illicit origin of the sums of money obtained from the commission of the offence of human trafficking, as well as for the purpose of integrating them into the apparently licit economic circuit, established on 09.11.2017 and on 26.03.2021 respectively the commercial companies* **TALISMAN ENTERPRISES SRL and GROUND BREAKING DEVELOPMENT SRL (formerly EMORY TATE AND SONS)**, *companies in which they figured as shareholders and administrators, and subsequently proceeded to introduce into the assets of the commercial companies significant sums of money, in the form of apparent loans granted to the companies, carried out exclusively through bank transfers, namely through the performance of* **38 crediting operations** *in the total amount of* **3,572,446.53 lei and 33,857 euros** *to* **TALISMAN ENTERPRISES SRL**, *as well as* **24 crediting operations** *in the total amount of* **9,516,289.94 lei and 366,467 euros** *to* **GROUND** |

| |
|---|
| **BREAKING DEVELOPMENT SRL**. *Subsequently, using these funds, the two defendants carried out, through the bank accounts of the companies or even of the defendants themselves,* **6 acquisitions** *consisting of land, constructions, services and a car, in the total amount of* **3,584,069.12 lei and 112,205 euros** *(through the commercial company TALISMAN ENTERPRISES SRL), as well as* **28 acquisitions** *of services, cars, land and a P+4 block-type building, in the total amount of* **9,616,466.18 lei and 246,550 euros** *(through the commercial company GROUND BREAKING DEVELOPMENT SRL), goods which entered the assets of the companies but were used exclusively in the personal interest of the defendants, namely for the purpose of modernizing and equipping the building in which they reside, as well as of acquiring cars, services and other goods for personal use, without any real connection to the declared object of activity of the commercial companies.* |
| By the prosecutor's ordinance no. **2557/D/P/2023** of **30.06.2026**, the **extension of the criminal prosecution IN PERSONAM** was ordered against the person named: |
| **TATE Tristan,** [redacted], in respect of the commission of the offence of **"continued influencing of statements" – 11 material acts, an act provided for by art. 272 para. 1 of the Criminal Code in conjunction with art. 35 para. 1 of the Criminal Code**, consisting in the fact that: |
| *In the period* **August 2023 – May 2024**, *the person named TRISTAN Tate attempted to determine or determined the witnesses* [redacted] **through acts of bribery** *(offering sums of money and mobile phones, providing legal assistance, as well as providing transport and accommodation in the municipality of Bucharest) and* **through acts having a manifestly intimidating effect** *(falsely warning them that the criminal prosecution bodies would exert pressure on the witnesses)* **not to give statements or to give false statements** *in the present criminal case, namely:* |
| - *in the course of October 2023, the person named TRISTAN TATE attempted to determine the witness* [redacted] *both through* **acts having a manifestly intimidating effect** *(falsely warning her that the criminal investigation bodies would exert pressure on her and that she would be "abused"), and* **through acts of bribery** *(offering a sum of money – an unestablished amount – and an iPhone 14 phone, the sum of 3,000 euros for the payment of transport expenses – plane tickets – and accommodation at a hotel in Bucharest, as well as providing legal assistance through Ms. attorney Cojan Daria of the Sibiu Bar with power of attorney on file Series SB no. 389082 of 19.10.2023),* **not to give statements or to give false statements** *in the present file on the occasion of the hearing as a witness of 19.10.2023;* |
| - *in the course of August – September 2023, the person named TRISTAN TATE attempted to determine the witness* [redacted] *through* **acts having a manifestly intimidating effect** *(falsely warning her that the criminal investigation bodies would exert pressure on the witness) and* **through acts of bribery** *(both by placing at the witness's disposal a luxury car to provide transport from Brașov to the DIICOT headquarters in Bucharest, and by providing legal assistance through Ms. attorney Hășmășan Alexandra of the Brașov Bar with power of attorney on file Series BV no. 222 of 07.09.2023),* **not to give statements**, *namely not to appear before the criminal investigation bodies at the date and time mentioned in the summons received, or* **to give false statements** *in the present file on the occasion of the hearing as a witness of 07.09.2023;* |
| - *in May 2024, the person named TRISTAN TATE attempted to determine the witness* [redacted] *through* **acts having a manifestly intimidating effect** *(falsely warning her that the criminal investigation bodies would exert pressure on the witness), and also* **through acts of bribery** *(by providing legal assistance through Ms. attorney Luca Lorette of the Brașov Bar with power of attorney on file no. 1 of 09.05.2024),* **not to give statements or to give false statements** *in the present file on the occasion of the hearing as a witness of 09.05.2024;* |
| - *in February 2024, the person named TRISTAN TATE attempted to determine the witness* [redacted] *through* **acts of bribery** *(by providing legal assistance through Ms. attorney Luca Lorette of the Brașov Bar with* |

| |
|---|
| *power of attorney on file no. 1 of 27.02.2024),* **not to give statements or to give false statements** *in the present file on the occasion of the hearing as a witness of 28.02.2024;* |
| *- in the period September – October 2023, the person named TRISTAN TATE,* **through acts of bribery** *(both by offering sums of money and by providing legal assistance through Ms. attorney Cojan Larisa Daria of the Sibiu Bar with attorney's power of attorney on file series SB no. 389081 of 09.10.2023),* **determined the witness** [redacted] **not to give a statement in the present case**, *namely not to appear before the criminal investigation bodies at the date and time mentioned in the summons received (it being necessary to issue a bringing-in warrant), and* **attempted to determine her to give false statements** *in the present file on the occasion of the hearing as a witness of 10.10.2023;* |
| *- in January 2024, the person named TRISTAN TATE attempted to determine the witness* [redacted] *hrough* **acts of bribery** *(by providing legal assistance through Mr. attorney Feraru Ionică Claudiu with attorney's power of attorney on file series B no. 7804713 of 17.01.2024),* **to give false statements** *in the present file on the occasion of the hearing as a witness of 17.01.2024;* |
| *- in March 2024, the person named TRISTAN TATE determined the witness* [redacted] *through* **acts of bribery** *(by providing legal assistance through Mr. attorney Feraru Ionică Claudiu with attorney's power of attorney on file series B no. 7804716 of 22.03.2024),* **to give false statements** *in the present file on the occasion of the hearing as a witness of 22.03.2024;* |
| *- in November 2023, the person named TRISTAN TATE attempted to determine the witness* [redacted] *through* **acts of bribery** *(by providing legal assistance through Mr. attorney Munteanu Bumbea Vlad of the Brașov Bar with the power of attorney on file series BV no. 333 of 20.11.2023),* **not to give statements or to give false statements** *in the present file on the occasion of the hearing as a witness of 20.11.2023;* |
| *- in January 2024, the person named TRISTAN TATE determined the witness* [redacted]*, both through* **acts having a manifestly intimidating effect** *(falsely warning her that the criminal investigation bodies would exert pressure on her and that they would "steal" her phone), and* **through acts of bribery** *(by offering sums of money),* **to give false statements** *in the present file on the occasion of the hearing as a witness of 17.01.2024;* |
| *- in November 2023, the person named TRISTAN TATE determined the witness* [redacted]*, through* **acts of bribery** *(by providing legal assistance through Mr. attorney Munteanu Bumbea Vlad of the Brașov Bar with the power of attorney on file series BV no. 332 of 20.10.2023),* **to give false statements** *in the present file on the occasion of the hearing as a witness of 19.03.2024;* |
| *- in August 2023, the person named TRISTAN TATE attempted to determine the witness* [redacted] *through* **acts of bribery** *(by providing legal assistance through his own attorney),* **not to give statements or to give false statements** *in the present file on the occasion of the hearing as a witness of 28.10.2024.* |
| By the prosecutor's ordinance no. **2557/D/P/2023** of **01.07.2026**, the following was ordered: |
| **I. The extension of the criminal prosecution IN REM in respect of the commission of the offence of:** |
| **- "removal of property from under seizure"** *- an act provided for by* **art. 261 para. (1) and (2) of the Criminal Code** *consisting in the fact that,* **after 31.03.2025, the defendants ANDREW and TRISTAN TATE,** *following the return and leaving in his custody of the cars over which the precautionary seizure had been instituted by the ordinances of 29.12.2022 and 05.01.2023, ordered by the Interlocutory Judgment of the Bucharest Court of Appeal issued on 31.03.2025, and being aware of the existence of the precautionary measure instituted over them, as well as of the express prohibition on alienating them,* **proceeded to alienate some of these cars for the purpose of removing them from the effect of the precautionary measure.** |
| **II. The extension of the criminal prosecution IN PERSONAM against the person named:** |

**TATE Tristan,** [redacted], in respect of the commission of the offence of **"removal of property from under seizure" – in the aggravated form, provided for by art. 261 para. (1) and (2) of the Criminal Code**, consisting in the fact that:

*following the return and leaving in his custody of the cars over which the precautionary seizure had been instituted by the ordinances of 29.12.2022 and 05.01.2023 (seizures maintained to date) – measures ordered by Interlocutory Judgment no. 3224/3/2025 of 31.03.2025 of the Bucharest Court of Appeal,* **being aware of the existence of the precautionary measure instituted over them, as well as of the express prohibition on alienating them, on 16.06.2025 the person named TATE Tristan proceeded to alienate the car of the make Porsche 911 Carrera 4S S-A, chassis series WP0ZZZ99ZOS219807, over which the precautionary seizure measure was instituted, to the person named** [redacted]**, in breach of the obligations incumbent on him as custodian and for the purpose of removing it from the effect of the precautionary measure.**

**************

By the prosecutor's ordinance no. **2557/D/P/2023** of **03.07.2026**, the **extension of the criminal action was ordered against the defendant TATE Tristan for the commission of the offences of:**

**- "complicity in trafficking in minors"**, an act provided for by **art. 48 para. 1 of the Criminal Code in conjunction with art. 211 para. 1 and 2 lit. a in conjunction with art. 210 para. 1 lit. a and b of the Criminal Code in conjunction with art. 182 lit. c of the Criminal Code in conjunction with art. 5 of the Criminal Code** *(prior to the amendments made by Law 202/2024 of 01.07.2024)* – **by reference to the victim** [redacted]

**- "continued money laundering" – in the concealment modality**, an act provided for and punishable by **art. 49 para. (1) lit. "b" of Law 129/2019 in conjunction with art. 35 para. (1) of the Criminal Code**,

**- "continued influencing of statements" – 11 material acts**, an act provided for by **art. 272 para. 1 of the Criminal Code in conjunction with art. 35 para. 1 of the Criminal Code**,

**- "removal of property from under seizure" – in the aggravated form, provided for by art. 261 para. (1) and (2) of the Criminal Code**,

**all in conjunction with art. 38 para. 1 of the Criminal Code.**

***

Analyzing the criminal prosecution documents, it is found that in the case the conditions provided for by **art. 202 of the Code of Criminal Procedure** are met.

**Thus, there is evidence and well-founded indications** *(statements of injured persons and witnesses; investigation reports, reports analyzing the data resulting from the conduct of computer searches, reports analyzing the information obtained on the basis of international cooperation, reports transcribing intercepted communications and the other evidence set out)*, from which it results that the defendant **TATE TRISTAN** committed the offences in respect of which the **extension of the criminal prosecution against him and the extension of the criminal action** were ordered, and the **imposition of the preventive measure of judicial control** is necessary for the purpose of ensuring the proper conduct of the criminal proceedings, of preventing the defendant from evading the criminal prosecution, of preventing the defendant from contacting the persons heard in the present case and influencing them, of removing the state of danger to public order, taking into account the gravity of the acts, the manner and circumstances in which they were committed, as well as for the purpose of preventing the commission of another offence.

| |
|---|
| The gravity of the imputed acts results both from their nature and from the concrete manner of commission. According to the charges made, the criminal activity is alleged to have been carried out over a prolonged period, is alleged to have involved obtaining significant patrimonial benefits and the use of mechanisms intended to conceal the origin of the funds and to prevent the establishment of the truth in the criminal proceedings. At the same time, the extension of the criminal prosecution for the offence of influencing statements takes into account alleged repeated endeavours to influence a large number of witnesses, by offering material advantages and by exerting pressures of an intimidating nature, aspects which reveal the existence of a concrete risk of impairing the administration of evidence and the proper conduct of the criminal proceedings. |
| Likewise, the charge concerning the commission of the offence of removal of property from under seizure indicates, at the level of reasonable suspicion, the non-compliance with obligations established by a precautionary measure ordered previously within the same case, a circumstance which highlights the necessity of instituting judicial obligations capable of ensuring compliance with the dispositions of the judicial bodies and the preservation of the purpose of the criminal proceedings. |
| A further, particularly relevant element in assessing the necessity of imposing the preventive measure of judicial control is constituted by the defendant's procedural conduct following the cessation of the preventive measure ordered previously. Thus, although the defendant was under the measure of judicial control until 12.02.2025, and throughout the entire duration of the criminal proceedings he was aware of the existence of the judicial procedures, as well as of the obligations and prohibitions instituted in the case, only a few months after the cessation of this measure, namely on 16.06.2025, he committed a new offence, |
| **consisting in the removal of property from under seizure**, by alienating a car over which the precautionary seizure measure was instituted. |
| This conduct reveals, at the level of reasonable suspicion specific to the criminal prosecution phase, a constant attitude of disregard for the measures ordered by the judicial bodies and of ignoring the legal obligations instituted within the present criminal proceedings. **The circumstance that the new act was committed after the cessation of judicial control demonstrates that the mere conduct of the judicial procedures and the prospect of criminal liability did not constitute sufficient factors to determine the defendant's compliance with the requirements of the law, outlining the existence of a concrete risk that, in the absence of a preventive measure, he would continue to adopt conduct of a nature to impede the proper conduct of the criminal proceedings or to frustrate the execution of the measures ordered by the judicial bodies.** |
| In these circumstances, the renewed institution of the measure of judicial control appears to be necessary and proportionate, since it allows the exercise of effective supervision over the defendant's conduct and the institution of concrete obligations, including that of not alienating the goods under seizure, of appearing at the summonses of the judicial bodies and of complying with all their dispositions, the measure being apt to prevent the reiteration of similar conduct and to ensure the proper conduct of the criminal proceedings. |
| Taking into consideration the gravity of the acts committed and the disturbance produced within the community by the defendant's manifestations, these requiring a firm reaction from the authorities, in the context of the recent discovery of these offences. |
| Likewise, a reluctance is observed on the part of the defendant Tristan TATE to appear at the summonses of the judicial bodies of late, it being necessary to issue several written and telephone summonses for his appearance. |
| In view of the foregoing, having regard to the fact that the measure of judicial control is proportionate to the gravity of the charges made against the defendant and necessary for achieving the purpose pursued by ordering it, and there being no cause preventing the setting in motion or exercise of the criminal action, on the basis of the provisions of art. 215[1] in conjunction with art. 202, art. 203 para. (2) and (4), art. 211 para. (1) and (4) and art. 215 para. (1)-(5) of the Code of Criminal Procedure and art. 82 and 83 of Law no. 253/2013 on the execution of |

| |
|---|
| penalties, educational measures and other non-custodial measures ordered by the judicial bodies in the course of the criminal proceedings, |
| **I ORDER:** |
| **The imposition of the measure of judicial control taken with respect to the defendant:** |
| **Tate Tristan, known as "Talisman Tate",** [redacted], **known to have a criminal record**, without military obligations, against whom the commission of the offences is retained of – **"complicity in trafficking in minors", an act provided for by art. 48 para. 1 of the Criminal Code in conjunction with art. 211 para. 1 and 2 lit. a in conjunction with art. 210 para. 1 lit. a and b of the Criminal Code in conjunction with art. 182 lit. c of the Criminal Code in conjunction with art. 5 of the Criminal Code** *(prior to the amendments made by Law 202/2024 of 01.07.2024)* – **by reference to the victim** [redacted], |
| **- "continued money laundering" – in the concealment modality**, an act provided for and punishable by **art. 49 para. (1) lit. "b" of Law 129/2019 in conjunction with art. 35 para. (1) of the Criminal Code**, |
| **- "continued influencing of statements" – 11 material acts**, an act provided for by **art. 272 para. 1 of the Criminal Code in conjunction with art. 35 para. 1 of the Criminal Code**, |
| **- "removal of property from under seizure" – in the aggravated form, provided for by art. 261 para. (1) and (2) of the Criminal Code, all in conjunction with art. 38 para. 1 of the Criminal Code.** |
| for a period of **60 days, from 03.07.2026 until 31.08.2026 inclusive.** |
| Throughout the time he is under judicial control, the defendant **Tate Tristan** must comply with the following obligations: |
| a) to appear before the criminal prosecution body, the preliminary chamber judge, or the trial court whenever summoned; |
| b) to immediately inform the judicial body that ordered the measure or before which the case is pending of any change of residence; |
| c) to appear at the police station in whose jurisdiction the defendant actually resides, in accordance with the supervision schedule drawn up by the police body, or whenever summoned; |
| e) not to communicate, directly or indirectly, with the defendants, the victims/injured persons and the witnesses in the present case. |
| The defendant **Tate Tristan** is warned that, in the event of a bad-faith breach of the obligations incumbent on him, the measure of judicial control may be replaced by the measure of house arrest or the measure of pre-trial detention. |
| The supervision of the defendant **Tate Tristan**'s compliance with the obligations incumbent on him during the judicial control shall be carried out by IPJ Ilfov – Voluntari Town Police. |
| The present ordinance shall be communicated to the defendant **Tate Tristan** and to IPJ Ilfov – Voluntari Town Police. |
| **CHIEF PROSECUTOR OF SERVICE** |

| **PROFIRA CEZAR** |
| --- |
| *[signature and round DIICOT stamp]* |