# DOSAR NR. 1305/D/P/2022

*Ordinance of 27.03.2026 – English translation*

*English text of this document, extracted from its Romanian–English parallel translation. Unofficial, for information only; not a certified or sworn translation.*

| **ENGLISH TRANSLATION** |
|---|
| **R O M A N I A** |
| **PUBLIC MINISTRY** |
| **PROSECUTOR'S OFFICE ATTACHED TO THE HIGH COURT OF CASSATION AND JUSTICE** |
| **DIRECTORATE FOR INVESTIGATING ORGANIZED CRIME AND TERRORISM** |
| **CENTRAL STRUCTURE** |
| **SECTION FOR COMBATING ORGANIZED CRIME** |
| **33 Sf. Vineri St., Bucharest, contact@diicot.ro, operator code 16051** |
| **Telephone: 021.412.34.04, Fax: 021 319.38.58** |
| **File no. 1305/D/P/2022** |
| **ORDINANCE** |
| *extending the preventive measure of judicial control* |
| **27.03.2026** |
| PROFIRA CEZAR – chief prosecutor of service within the Prosecutor's Office attached to the High Court of Cassation and Justice - DIRECTORATE FOR INVESTIGATING ORGANIZED CRIME AND TERRORISM – Central Structure, Section for Combating Organized Crime; |
| Having examined the criminal prosecution documents drawn up in the file bearing the above number, |
| **FINDS:** |
| **Manner of referral:** |
| By the **indictment of 15 June 2023**, issued in criminal prosecution file no. 1305/D/P/2020, it was ordered: |
| **1. Committal for trial**, under house arrest, of the defendant **TATE III Emory Andrew**, for committing the offences of: **constitution of an organized criminal group**, provided by art. 367 para. 1, 3 and 6 of the Criminal Code, **human trafficking**, in continued form, provided by art. 210 para. 1 lit. a of the Criminal Code in conjunction with art. 182 lit. a and c of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (four material acts concerning the injured persons [redacted], in the period end of 2016 - April 2018, [redacted], in the period January 2022 - 11 April 2022, and victims [redacted], in the period May 2021 - December 2022, and [redacted], in the period February 2021 - December 2022) and **rape**, in continued form – two material acts, provided by art. 218 para. 1 of the Criminal Code, with application of art. 35 para. 1 of the Criminal |

Code (injured person [redacted], acts of 20.03.2022 and 27.03.2022), *all with application of art. 38 para. 1 of the Criminal Code*

**2. Committal for trial**, under house arrest, of the defendant **TATE Tristan**, for committing the offences of: **constitution of an organized criminal group**, provided by art. 367 para. 1, 3 and 6 of the Criminal Code, **human trafficking**, in continued form, provided by art. 210 para. 1 lit. a of the Criminal Code in conjunction with art. 182 lit. a and c of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (three material acts in relation to the victims: [redacted]A, in the period July 2021 - 27 February 2022; [redacted] in the period August 2021 – 28 October 2021; [redacted], in the period November 2021 – 11 April 2022), **incitement to battery or other violence**, provided by art. 47 of the Criminal Code in conjunction with art. 193 para. 1 of the Criminal Code (injured person [redacted], act of 28 October 2021), *all with application of art. 38 para. 1 of the Criminal Code.*

**3. Committal for trial**, under house arrest, of the defendant **Naghel Georgiana-Manuela**, for committing the offences of: **constitution of an organized criminal group**, provided by art. 367 para. 1, 3 and 6 of the Criminal Code, **human trafficking**, in continued form, provided by art. 210 para. 1 lit. a of the Criminal Code in conjunction with art. 182 lit. a and c of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (six material acts, the victims: [redacted], in the period in the period 05 April 2022 - 11 April 2022, [redacted], in the period in the period 01 March 2022 - 11 April 2022, [redacted], in the period in the period 28 October 2021 - 27 February 2022, [redacted] in the period in the period August 2021 – 28 October 2021, [redacted] in the period May 2021 – December 2022, and [redacted], in the period April 2021 – December 2022), **illegal access to a computer system**, provided by art. 360 para. 1 and 3 of the Criminal Code, (injured person [redacted], act of 29 October 2021), **alteration of the integrity of computer data**, provided by art. 362 of the Criminal Code, (injured [redacted], act of 29 October 2021), **battery or other violence**, provided by art. 193 para. 1 of the Criminal Code, (injured person [redacted] act of 28 October 2021), *all with application of art. 38 para. 1 of the Criminal Code.*

**4. Committal for trial**, under house arrest, of the defendant [redacted], for committing the offences of: **constitution of an organized criminal group**, provided by art. 367 para. 1, 3 and 6 of the Criminal Code and **human trafficking**, in continued form – provided by art. 210 para. 1 lit. a of the Criminal Code in conjunction with art. 182 lit. a and c of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (five material acts in relation to the victims: [redacted] in the period in the period 05 April 2022 - 11 April 2022, [redacted], in the period in the period 28 October 2021 - 27 February 2022, [redacted] in the period in the period August 2021 – 28 October 2021, [redacted], in the period May 2021 – December 2022, and [redacted] in the period April 2021 – December 2022), ***both with application of art. 38 para. 1 of the Criminal Code.***

**5. Dismissal of the case** with regard to the commission of the offence of unlawful deprivation of liberty, provided by art. 205 of the Criminal Code, since the act is not provided for by criminal law.

**6. Severance of the case with regard to the commission of the offences of:**

**6.1. money laundering**, provided by art. 49 para. 1 lit. a and b of Law no. 129/2019 on the prevention and combating of money laundering and terrorism financing, in respect of which the extension of the criminal prosecution was ordered by Ordinance no. 1305/D/P/2022 of 11.01.2023 of the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for Investigating Organized Crime and Terrorism – Central Structure;

**6.2. favouring the offender**, provided by art. 269 para. 1 of the Criminal Code, in respect of which the extension of the criminal prosecution was ordered by Ordinance no. 1305/D/P/2022 of 11.01.2023 of the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for Investigating Organized Crime and Terrorism – Central Structure;

| |
|---|
| **6.3. influencing statements**, provided by art. 272 para. 1 of the Criminal Code, in respect of which the extension of the criminal prosecution was ordered by the ordinance of 22 February 2023; |
| **6.4. trafficking in minors**, provided by art. 211, para. 1 and 2, lit. a of the Criminal Code, in conjunction with art. 210 para. 1 lit. b of the Criminal Code, in respect of which the initiation of criminal prosecution "in rem" was ordered by the ordinance of the prosecutor within DIICOT – Territorial Service Galați of 07 April 2021; |
| **6.5. human trafficking**, provided by art. 210 para. 1 lit. a of the Criminal Code, in respect of which the initiation of criminal prosecution was ordered by Ordinance no. 1305/D/P/2022 of 11 April 2022. |
| Following the severance of the case, file no. **3062/D/P/2023** was registered. |
| Thus, as regards the severance solutions of the case, it was held that it is necessary to continue carrying out the investigation and criminal prosecution activities in order to clarify all the factual aspects concerning the commission of the offences of: |
| **1. money laundering**, provided by art. 49 para. 1 lit. a and b of Law no. 129/2019 on the prevention and combating of money laundering and terrorism financing, in respect of which the extension of the criminal prosecution was ordered by Ordinance no. 1305/D/P/2022 of 11.01.2023 of the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for Investigating Organized Crime and Terrorism – Central Structure, consisting in the fact that: *beginning with the year 2021, on the territory of Romania, the defendants TATE III EMORY ANDREW, TATE Tristan and Naghel Georgiana, assisted by other persons, obtained sums of money from criminal activities, which they transferred through bank accounts and cryptocurrency trading platforms, and invested in commercial companies, movable and immovable properties in Romania and abroad, subsequently assigned the shares by means of which they had acquired the assets, in the name of interposed persons, with a view to concealing and disguising the illicit origin of these assets, as well as for the purpose of helping the defendants Andrew Tate and Tate Tristan to evade prosecution, trial and the execution of the sentence;* |
| **2. favouring the offender**, provided by art. 269 para. 1 of the Criminal Code, in respect of which the extension of the criminal prosecution was ordered by Ordinance no. 1305/D/P/2022 of 11.01.2023 of the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for Investigating Organized Crime and Terrorism – Central Structure, consisting in the fact that: *the persons named Bogdan Stancu and Vali Coman, after the arrest of the defendants, namely at the beginning of 2023, undertook steps consisting in the drawing up of notarial statements in favour of the defendants TATE III EMORY ANDREW, TATE Tristan and Naghel Georgiana, with the purpose of using these statements at the hearing of the appeal against the pre-trial detention interlocutory judgment issued by the Bucharest Tribunal on 30 December 2022, providing assistance to the defendants for the purpose of hindering and obstructing the investigations in the present case, the holding of the defendants criminally liable, and the execution of the custodial measures;* |
| **3. influencing statements**, provided by art. 272 para. 1 of the Criminal Code, in respect of which the extension of the criminal prosecution was ordered by the ordinance of 22 February 2023, consisting in the fact that, *during the period of incarceration, namely 29 December 2022 – February 2023, the defendant Andrew Tate, assisted by the witness* [redacted]*, through other persons among whom a person known by the name LUKE, attempted to induce the injured persons* [redacted] *by coercion and other acts of manifestly intimidating character (notifications through commercial companies in the USA) committed against them and against the members of their families, to withdraw the statements given in the present case and to give false statements in the present case, with the purpose of avoiding the holding of the defendants criminally liable;* |
| **4. trafficking in minors**, provided by art. 211, para. 1 and 2 lit. a of the Criminal Code, in conjunction with art. 210 para. 1 lit. b of the Criminal Code, in respect of which the initiation of criminal prosecution "in rem" was ordered by the ordinance of the prosecutor within DIICOT – Territorial Service Galați of 07 April 2021, *consisting in the fact that on 30.03.2021, the police bodies within the B.C.C.O. Galați took up the matter ex officio regarding* |

| |
|---|
| *the fact that, during November 2020, the minor* [redacted] *was recruited by the "loverboy" method by the defendant Tate Tristan for the purpose of exploitation by inducing her to engage in prostitution;* |
| **5. human trafficking**, provided by art. 210 para. 1 lit. a of the Criminal Code, in respect of which the extension of the criminal prosecution was ordered, in rem, by Ordinance no. 1305/D/P/2022 of 11 April 2022, concerning other exploited persons and other perpetrators. |
| * * * |
| By **Interlocutory Judgment no. 804/CP** delivered on **19.12.2024** in file **no. 18906/3/2023/a1** by the preliminary chamber judge within the Bucharest Court of Appeal – Criminal Division I, the **irregularity of indictment no. 1305/D/P/2022 drawn up on 15.06.2023** by the Prosecutor's Office attached to the High Court of Cassation and Justice - Directorate for Investigating Organized Crime and Terrorism - Central Structure was found, ordering: |
| *"Pursuant to art. 346 para. (3) lit. a) of the Code of Criminal Procedure, **remits** to the Prosecutor's Office attached to the High Court of Cassation and Justice - Directorate for Investigating Organized Crime and Terrorism – Central Structure the case in which indictment no. 1305/D/P/2022 of 15.06.2023 was issued, whereby the appellant-defendants **TATE III EMORY ANDREW, TATE TRISTAN, NAGHEL GEORGIANA-MANUELA and RADU ALEXANDRA-LUANA** were committed for trial."* |
| * * * |
| By Ordinance no. **1305/D/P/2022** of **27.01.2025**, the **resumption of the criminal prosecution** was ordered in case **no. 1305/D/P/2022**, with a view to remedying the irregularity of the act referring the matter to the court, found by Interlocutory Judgment no. **804/CP** delivered on **19.12.2024** in file **no. 18906/3/2023/a1** by the preliminary chamber judge within the Bucharest Court of Appeal – Criminal Division I, and the carrying out of the criminal prosecution acts as mentioned in the operative part thereof. |
| * * * |
| By **Interlocutory Judgment of the Bucharest Tribunal – Criminal Division I** delivered on **18.07.2023** in **file no. 18906/3/2023/a1.2**, the **lawfulness and soundness of the house arrest measure taken with respect to the defendants, TATE III EMORY ANDREW,** [redacted] **TATE TRISTAN,** [redacted] by Interlocutory Judgment no. 120/CO-DL/31.03.2023 of the Bucharest Court of Appeal – Criminal Division II delivered in file no. 8921/3/2023; **NAGHEL GEORGIANA-MANUELA,** [redacted], by Interlocutory Judgment no. 120/CO-DL/31.03.2023 of the Bucharest Court of Appeal – Criminal Division II delivered in file no. 8921/3/2023; **RADU ALEXANDRA-LUANA,** [redacted] by **Interlocutory Judgment no. 120/CO-DL/31.03.2023 of the Bucharest Court of Appeal – Criminal Division II** delivered in file no. **8921/3/2023**. |
| By **Interlocutory Judgment no. 428/CP of the Bucharest Court of Appeal – Criminal Division I** delivered on **04.08.2023, the admission of the appeals** lodged by the defendants Tate III Emory Andrew, Tate Tristan, Radu Luana Alexandra and Naghel Georgiana-Manuela against the interlocutory judgment of 18.07.2023 of the preliminary chamber judge within the Bucharest Tribunal, Criminal Division I, delivered in file no. 18906/3/2023/a1.2 was ordered, the challenged interlocutory judgment being set aside and, re-judging: |

| |
|---|
| Pursuant to art. 348 of the Code of Criminal Procedure with reference to art. 207 of the Code of Criminal Procedure, finds the lawfulness of the house arrest measure with respect to the defendants Tate III Emory Andrew, Tate Tristan, Radu Luana Alexandra and Naghel Georgiana-Manuela. |
| Pursuant to art. 242 para. 2 of the Code of Criminal Procedure with reference to art. 211 et seq. of the Code of Criminal Procedure, **replaces the house arrest measure** of the defendants Tate III Emory Andrew, Tate Tristan, Radu Luana Alexandra and Naghel Georgiana-Manuela **with the preventive measure of judicial control**, for a period of 60 days, from 04 August 2023 until 02 October 2023 inclusive. |
| * * * |
| By **Interlocutory Judgment of the Bucharest Tribunal – Criminal Division I** delivered on **05.12.2024** in file no. **18906/3/2023/a6**, the lawfulness and soundness of the judicial control measure ordered with respect to the defendants TATE III EMORY ANDREW, TATE TRISTAN, NAGHEL GEORGIANA-MANUELA and RADU ALEXANDRA-LUANA was found, and it **maintains the judicial control measure with respect to the defendants, until a new verification of the preventive measure, but no later than 60 days.** |
| By **Interlocutory Judgment of the Bucharest Court of Appeal – Criminal Division I no. 795** delivered on **17.12.2024** in file no. **18906/3/2023/a6**, the appeals of the defendants TATE III EMORY ANDREW, TATE TRISTAN, NAGHEL GEORGIANA-MANUELA and RADU ALEXANDRA-LUANA were dismissed as unfounded. |
| By the ordinance of **31.01.2025**, the **extension of the judicial control measure** taken with respect to the defendants TATE Emory III Andrew, Tate Tristan, NAGHEL Georgiana-Manuela and RADU Alexandra-Luana was ordered for **a period of 60 days, from 03.02.2025 until 03.04.2025 inclusive.** |
| By Interlocutory Judgment **no. 3591/3/2025** of 10.02.2025, the Bucharest Tribunal **dismissed** the complaint of the defendants Tate Emory Andrew and Tate Tristan, and by Interlocutory Judgments **no. 3587/3/2025** of 17.02.2025 and **no. 3594/3/2025** of 05.02.2025, the complaints of the defendants Naghel Georgiana and Radu Luana against the prosecutor's ordinance extending the preventive measure of judicial control were dismissed. |
| **INFORMATION CONCERNING THE DEFENDANTS' REQUESTS:** |
| **1.** On 24.02.2025 there was registered with DIICOT the request of the defendants **Tate Emory Andrew**, identified by residence permit no. 000010383, personal identification number (PIN): 7861201080029, and **Tate Tristan**, identified by residence permit no. 000010380, PIN 7880715470021, through their chosen defence counsel, attorney VIDINEAC EUGEN CONSTANTIN, with domicile elected for the service of procedural documents at the secondary office of the Civil Law Partnership of Attorneys "Vidineac and Associates", located in Bucharest, 23 Regina Maria Blvd., floor 1, apt. 3, District 4, who, pursuant to the provisions of **art. 215 para. 8 of the Code of Criminal Procedure**, requested the **amendment of the content of the preventive measure of judicial control** ordered by Interlocutory Judgment no. 428/CP of 04.08.2023 delivered by the Bucharest Court of Appeal in file no. 18906/3/2023/a2, in the sense of removing the prohibition on approaching and contacting the person named [redacted] |
| After the hearing of the defendants **Tate Emory Andrew** and **Tate Tristan**, by DIICOT Ordinance no. 1305/D/P/2022 of 24.02.2025, the defendants' request was admitted, ordering the lifting of the prohibition on contacting the person named [redacted] |
| **2.** On 25.02.2025 there was registered with DIICOT the request of the defendants **Tate Emory Andrew**, identified by residence permit no. 000010383, PIN: 7861201080029, and **Tate Tristan**, identified by residence permit no. 000010380, PIN 7880715470021, through their chosen defence counsel, attorney VIDINEAC EUGEN CONSTANTIN, with domicile elected for the service of procedural documents at the secondary office of the Civil Law Partnership of Attorneys "Vidineac and Associates", located in Bucharest, 23 Regina Maria Blvd., floor 1, |

| |
|---|
| apt. 3, District 4, who, pursuant to the provisions of **art. 215 para. 8 of the Code of Criminal Procedure**, requested the **revocation of the preventive measure of judicial control ordered by Interlocutory Judgment no. 428/CP of the Bucharest Court of Appeal delivered on 04.08.2023 in file no. 18906/3/2023/al.2 and extended by means of the Ordinance extending the preventive measure of judicial control issued on 31.01.2025 in file no. 1305/D/P/2022.** |
| On 25.02.2025 there was registered with D.I.I.C.O.T. the request of the defendant **Tate Emory Andrew**, identified by residence permit no. 000010383, PIN: 7861201080029, and **Tate Tristan**, identified by residence permit no. 000010380, PIN 7880715470021, through their chosen defence counsel, attorney Alexandru Rîşniţă, with domicile elected for the service of procedural documents at the office of the law practice of Alexandru Rîşniţă, located in Cluj-Napoca, 44 Axente Sever St., who, pursuant to the provisions of **art. 215 para. 8 of the Code of Criminal Procedure**, as well as the request of the chosen defence counsel, attorney Vidineac Eugen Constantin, with domicile elected for the service of procedural documents at the secondary office of the Civil Law Partnership of Attorneys "Vidineac and Associates", located in Bucharest, 23 Regina Maria Blvd., floor 1, apt. 3, District 4, whereby they requested the **cessation of the obligation not to leave the territory of Romania, pertaining to the judicial control.** |
| After the hearing of the defendants **Tate Emory Andrew** and **Tate Tristan**, by DIICOT Ordinance no. 1305/D/P/2022 of 25.02.2025, the following were ordered: |
| *"**1. Rejection of the request** made by the defendants **TATE III Emory Andrew**,* [redacted] *PIN 7861201080029, and **TATE Tristan**,* [redacted]*, through their chosen defence counsel, attorney Vidineac Eugen Constantin, **for the revocation of the preventive measure of judicial control.*** |
| ***2. Admission of the request** made by the defendants **TATE III Emory Andrew**,* [redacted] *PIN 7861201080029, and **TATE Tristan**,* [redacted]*, through their chosen defence counsel, attorney Vidineac Eugen Constantin and chosen defence counsel, attorney Alexandru Rîşniţă, **for the amendment of the judicial control measure taken with respect to them..*** |
| ***Amendment of the judicial control measure taken with respect to the defendants:*** |
| ***TATE III Emory Andrew**,* [redacted]*, and **TATE Tristan**,* [redacted] |
| ***The obligation not to exceed the territorial limit of Romania, except with the prior authorization of the criminal prosecution bodies, the preliminary chamber judge, or the trial court, is removed."*** |

******

Subsequently, by the ordinances of the prosecutor within the Prosecutor's Office attached to the High Court of Cassation and Justice – Directorate for Investigating Organized Crime and Terrorism of **01.04.2025, 23.05.2025, 25.07.2025, 29.09.2025, 27.11.2025 and 23.01.2026**, the **extension of the judicial control measure taken with respect to the defendants** was successively ordered:

**I. TATE Tristan**, known as "Talisman Tate", [redacted], with no military obligations, charged with committing the offences of **constitution of an organized criminal group**, provided by art. 367 para. 1, 3 and 6 of the Criminal Code; **human trafficking, in continued form**, provided by art. 210 para. 1 lit. a of the Criminal Code in conjunction with art. 182 lit. a and c of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (*three material acts in relation to the victims:* [redacted] *in the period July 2021 - 27 February 2022;* [redacted]*, in the period August 2021 – 28 October 2021;* [redacted]*, in the period November 2021 – 11 April 2022*); **incitement to battery or other violence**, provided by art. 47 of the Criminal Code in conjunction with art. 193 para. 1 of the Criminal Code (*injured person* [redacted]*, act of 28 October 2021*), **all with application of art. 38 para. 1 of the Criminal Code**, most recently, for a period of **60 days, from 29.01.2026 until 29.03.2026 inclusive;**

**II. TATE III Emory Andrew**, [redacted], with no military obligations, charged with committing the offences of **constitution of an organized criminal group**, provided by art. 367 para. 1, 3 and 6 of the Criminal Code; **human trafficking**, in continued form, provided by art. 210 para. 1 lit. a of the Criminal Code in conjunction with art. 182 lit. a and c of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (*four material acts concerning the injured persons* [redacted]*, in the period end of 2016 - April 2018,* [redacted] *the period January 2022 - 11 April 2022, and victims* [redacted] *in the period May 2021 - December 2022, and* [redacted] *in the period February 2021 - December 2022*); **rape**, in continued form – two material acts, provided by art. 218 para. 1 of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (*injured person* [redacted]*, acts of 20.03.2022 and 27.03.2022*); **all with application of art. 38 para. 1 of the Criminal Code**, most recently, for a period of **60 days, from 29.01.2026 until 29.03.2026 inclusive;**

By Interlocutory Judgment **no. 25646/3/2025** of **06.08.2025**, the Bucharest Tribunal **dismissed** as unfounded the complaint of the defendants Tate Emory III Andrew and Tate Tristan against the ordinance of **25.07.2025** by which the extension of the preventive measure of judicial control was ordered from 02.08.2025 until 30.09.2025 inclusive.

By Interlocutory Judgment **no. 33808/3/2025** of **13.10.2025**, the Bucharest Tribunal **dismissed** as unfounded the complaint of the defendants Tate Emory III Andrew and Tate Tristan against the ordinance of **30.09.2025** by which the extension of the preventive measure of judicial control was ordered from 01.10.2025 until 29.11.2025 inclusive.

* * *

Analyzing the criminal prosecution documents, it is found that in the case the conditions provided by **art. 202 of the Code of Criminal Procedure** are met.

**Thus, there is evidence and well-founded indications** (*statements of injured persons and witnesses; investigation reports, reports analyzing the data resulting from the computer searches, reports analyzing the information obtained on the basis of international cooperation, reports transcribing interceptions, the reports of home searches and the other evidence set out*), from which it results that the defendants **TATE Emory III Andrew and Tate Tristan** committed the offences in respect of which the continuation of the criminal prosecution against them and the initiation of the criminal action were ordered, and the **extension of the preventive measure of judicial control**

| |
|---|
| is necessary for the purpose of ensuring the proper conduct of the criminal proceedings, of preventing the defendants from evading the criminal prosecution, of preventing the defendants from contacting the persons heard in the present case and influencing them, of removing the state of danger to public order, taking into account the gravity of the acts, the manner and circumstances in which they were committed, as well as for the purpose of preventing the commission of another offence. |
| As regards the maintenance of the preventive measure of judicial control, it is conditioned, on the one hand, on the existence of evidence or well-founded indications giving rise to the reasonable suspicion that a person has committed an offence and, on the other hand, on the need to ensure the proper conduct of the criminal proceedings, it being also possible to find that the social danger represented by the defendant has not substantially diminished compared to the moment when the preventive measure was ordered by the court. |
| Likewise, the gravity of the accusation brought against the defendants must be noted, an accusation that justifies maintaining the preventive measure of judicial control, since from the body of evidence administered in the present case there is proof that there is a possibility that the defendants may thwart the proper conduct of the criminal proceedings by influencing the statements of witnesses or injured persons. |
| Likewise, the condition of proportionality, provided by art. 202 para. 3 of the Code of Criminal Procedure, is met, the judicial control measure — the mildest of the preventive measures — being proportionate to the gravity of the accusation brought against the defendants. Moreover, **the defendants TATE Emory III Andrew and Tate Tristan were granted their request to have removed the prohibition on leaving the territory of Romania, they having total freedom of movement at present, the defendants TATE Emory III Andrew and Tate Tristan constantly leaving the territory of Romania since February 2025.** |
| Analyzed from the perspective of the appropriateness of the preventive measures under which the defendants were placed, it is held that their legal situation and the procedural stage of the file require that the liberty of those concerned be subordinated to procedural guarantees, it being necessary to maintain permanent and supervised contact between them and the judicial body, as well as a prompt response to any summons of the judicial authority, so that it is considered that there is a fair balance between the interference with the defendants' legal and constitutional rights and the aim pursued, namely to ensure that the criminal proceedings brought against them proceed at an undisturbed pace. |
| The defendants were placed under a preventive measure restrictive of liberty not only to be at the disposal of the judicial bodies, but also examining from the perspective of the imperative need to protect the process of administering evidence, in which sense it is necessary for them to be under the regime of subordinating liberty to procedural guarantees, having to bear certain restrictions not only regarding freedom of movement and social life, and to have the manner of compliance with the imposed obligations verified, in particular with monitored observation also of the persons with whom they come into contact and of their forms of manifestation, thus also avoiding the risk of committing new offences of the same kind. |
| Likewise, it is considered that the judicial control measure is necessary to ensure the proper conduct of the criminal proceedings, but also to prevent the defendants from committing other offences, given the nature of the acts for which they are being investigated and the context in which they were committed. Therefore, owing to the specific nature of the offences for which the defendants are being investigated, the preventive measure is necessary at this procedural moment. |
| From this perspective, not even the personal circumstances of the defendants can counterbalance the gravity of the acts committed, and they are wholly insufficient to justify the revocation of the preventive measure ordered in the case. |
| At the same time, it is found that the preventive measure of judicial control is also proportionate to the gravity of the accusations brought against the defendants, given that, as shown, they are charged with the commission of acts |

| |
|---|
| of a high degree of gravity, in respect of which there exist, up to this moment, well-founded indications giving rise to the reasonable suspicion that they were committed in the manner held by the judicial body. |
| Therefore, for the reasons held and by reference to the gravity of the acts allegedly committed, as well as the procedural imperatives, such as ensuring the proper conduct of the criminal proceedings and keeping the defendants at the disposal of the judicial bodies, which could require their presence at any moment for the purpose of carrying out the criminal prosecution, I consider that the absence of *any* form of control over the defendants **TATE Emory III Andrew and Tate Tristan** *would not be appropriate.* |
| With the factual and legal argumentation set out above, it is considered that this measure, merely restrictive of rights, satisfies the requirements of appropriateness and proportionality in full accordance with domestic provisions and consistent with the case-law of the ECtHR, responds to the imperative of ensuring the proper conduct of the criminal proceedings, by obtaining lawful evidence, for the timely and complete establishment of the acts constituting offences, so that any person who has committed an offence is punished according to their guilt and no innocent person is held criminally liable. |
| As regards the condition of proportionality, relating the reasonable duration of the judicial control measure to art. 5 para. 3 of the ECHR, it is considered that it is observed, taking into account the procedural stage in which the case currently stands and in relation to which the provisions of art. 215[1] para. (6) of the Code of Criminal Procedure become applicable. |
| Thus, in the sense of this latter legal provision - *"During the criminal prosecution, the duration of the judicial control measure may not exceed one year, if the penalty provided by law is a fine or imprisonment of at most 5 years, respectively 2 years, if the penalty provided by law is life detention or imprisonment greater than 5 years."* |
| The time elapsed since the date the judicial control measure was taken *(04.08.2023)* appears to be insufficient to consider that the state of danger has diminished, and given the complexity and the procedural stage in which the case stands ***(the criminal prosecution having been resumed on 27.01.2025 after the remittal of the case by the preliminary chamber judge on 19.12.2024)***, it is considered that the duration of the preventive measure of judicial control has not exceeded a reasonable term. |
| Furthermore, it is held that since the date of the last verification of the subsistence of the grounds that required the taking of the preventive measures against the defendants, various procedural and process acts have been carried out *(re-hearing of injured persons and witnesses, orders for the return of assets, orders analyzing the defendants' requests, investigation reports, issuance of a request for letters rogatory, etc.)*, so that there were no moments of inactivity in the judicial procedure of such a nature as to call into question the conditions of necessity and proportionality of the preventive measures. |
| In view of the foregoing, considering that the judicial control measure is proportionate to the gravity of the accusations formulated against the defendants and necessary for achieving the aim pursued by ordering it, and that there is no cause preventing the initiation or exercise of the criminal action, pursuant to the provisions of art. 215[1] in conjunction with art. 202, art. 203 para. (2) and (4), art. 211 para. (1) and (4) and art. 215 para. (1)-(5) of the Code of Criminal Procedure and art. 82 and 83 of Law no. 253/2013 on the execution of penalties, educational measures and other non-custodial measures ordered by the judicial bodies during criminal proceedings, |
| **ORDER:** |
| **I. Extension of the judicial control measure taken with respect to the defendants:** |
| **I. TATE Tristan**, known as "Talisman Tate", [redacted] with no military obligations, charged with committing the offences of **constitution of an organized criminal group**, |

| |
|---|
| provided by art. 367 para. 1, 3 and 6 of the Criminal Code; **human trafficking, in continued form**, provided by art. 210 para. 1 lit. a of the Criminal Code in conjunction with art. 182 lit. a and c of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (*three material acts in relation to the victims:* [redacted]*, in the period July 2021 - 27 February 2022;* [redacted]*, in the period August 2021 – 28 October 2021;* [redacted]*, in the period November 2021 – 11 April 2022*); **incitement to battery or other violence**, provided by art. 47 of the Criminal Code in conjunction with art. 193 para. 1 of the Criminal Code (*injured person* [redacted]*, act of 28 October 2021*), **all with application of art. 38 para. 1 of the Criminal Code**, for a period of **60 days, from 30.03.2026 until 28.05.2026 inclusive;** |
| **II. TATE III Emory Andrew,** [redacted] with no military obligations, charged with committing the offences of **constitution of an organized criminal group**, provided by art. 367 para. 1, 3 and 6 of the Criminal Code; **human trafficking**, in continued form, provided by art. 210 para. 1 lit. a of the Criminal Code in conjunction with art. 182 lit. a and c of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (*four material acts concerning the injured persons* [redacted] *in the period end of 2016 - April 2018,* [redacted] *in the period January 2022 - 11 April 2022, and victims* [redacted]*, in the period May 2021 - December 2022, and* [redacted]*, in the period February 2021 - December 2022*); **rape**, in continued form – two material acts, provided by art. 218 para. 1 of the Criminal Code, with application of art. 35 para. 1 of the Criminal Code (*injured person* [redacted]); **all with application of art. 38 para. 1 of the Criminal Code**, for a period of **60 days, from 30.03.2026 until 28.05.2026 inclusive;** |
| Throughout the time they are under judicial control, the defendants **TATE Emory III Andrew and Tate Tristan** must comply with the following obligations: |
| a) to appear before the criminal prosecution body, the preliminary chamber judge, or the trial court whenever summoned; |
| b) to immediately inform the judicial body that ordered the measure or before which the case is pending of any change of residence; |
| c) to appear at the police station in whose jurisdiction the defendant actually resides, in accordance with the supervision schedule drawn up by the police body, or whenever summoned; |
| e) the defendants Tate III Emory Andrew and Tate Tristan, the defendants shall not approach the witnesses in the file: [redacted] or the family members of the injured persons or civil parties; shall not communicate with these persons, directly or indirectly, by any means; |
| f) to periodically provide relevant information about their means of subsistence; |
| g) not to possess, use, or carry weapons. |
| The defendants **TATE Emory III Andrew and Tate Tristan** are warned that, in the event of bad-faith breach of the obligations incumbent upon them, the judicial control measure may be replaced with the house arrest measure or the pre-trial detention measure. |

| |
|---|
| The supervision of compliance by the defendants **TATE Emory III Andrew and Tate Tristan** with the obligations incumbent upon them during the judicial control shall be carried out by **IPJ Ilfov – Voluntari Town Police.** |
| The present ordinance shall be communicated to the defendants **TATE Emory III Andrew and Tate Tristan** and to **IPJ Ilfov – Voluntari Town Police.** |
| **CHIEF PROSECUTOR OF SERVICE,** |
| **CEZAR PROFIRA** |
| *[signature and round DIICOT stamp]* |